UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. DEPARTMENT OF THE INERIOR,** *et al.*, <br><br> Defendants. | Civil Action No. 22-cv-1716 (TSC) |

### MEMORANDUM OPINION

On June 15, 2022, Plaintiffs Center for Biological Diversity and WildEarth Guardians sued Defendants U.S. Department of the Interior ("Interior"); Debra Haaland, Interior Secretary; U.S. Bureau of Land Management ("BLM"); and Tracy Stone-Manning, BLM Director. Plaintiffs challenge Defendants' approval of approximately 4,019 applications for permits to drill ("APDs") for oil and gas in New Mexico's Permian Basin and Wyoming's Powder River Basin between January 21, 2021, and May 31, 2022. ECF No. 57, Amend. Compl. ¶ 1.

Plaintiffs allege that the APD approvals violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370m-11, the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701–1787, as well as those statutes' implementing regulations. *Id*. They ask the court, among other things, to vacate the challenged approved APDs and enjoin Defendants from "approving or otherwise taking action to approve any applications for permits to drill on federal public lands and minerals until Defendants have fully complied with" NEPA, ESA, and FLPMA. *Id*. at 61.

Since July 2022, nine prospective Defendant-Intervenors have filed Motions to Intervene as of right under Federal Rule of Civil Procedure 24(a), or in the alternative, to permissively intervene under Rule 24(b). Plaintiffs and Defendants have taken no position as to these motions but reserved the right to file a response to them. To date, no such responses have been filed. Because all movants satisfy the requirements in Rule 24(a) and possess the requisite standing to intervene, the court will GRANT the motions to intervene.

## I.  BACKGROUND

The challenged APDs—totaling at least 4,019—"constitute approximately 74% of all BLM onshore oil and gas drilling permit approvals" during the first 20 months of the Biden Administration. *Id*. ¶ 100. Plaintiffs assert that in approving the APDs, Defendants failed to adequately consider the cumulative impact of greenhouse gas emissions resulting from oil and gas production in these regions and failed to comply with other procedural obligations. *Id*. ¶¶ 101-04.

### A. The Prospective Defendant Intervenors

Oxy USA Inc., OXY USA WTP LP Oxy, and Anadarko E & P Onshore LLC (collectively "Oxy") represents three drilling companies that have been issued 139 of the challenged APDs. ECF No. 8, Mot. to Intervene by Oxy ("Oxy Mot.") at 1-2. The companies own mineral rights in New Mexico and Wyoming, which they acquired through government lease sales and acquisitions from other companies. *Id*.

Chevron U.S.A., Inc. ("Chevron") is one of the largest producers of oil and natural gas and has been operating in the Permian Basin since the 1920s. ECF No. 17, Mot. to Intervene by Chevron ("Chevron Mot.") at 2. Chevron alleges that it holds approximately 90 challenged permits. *Id*. at 1.

Peak Powder River Resources, LLP ("PPRR") also holds challenged drilling permits for operations in the Powder River Basin.  ECF No. 32, Mot. to Intervene by PPRR ("PPRR Mot.") at 1.

Anschutz Exploration Corporation ("AEC") is an independent oil and gas development company that holds 78 of the challenged APDs for federal leases in Wyoming.  ECF No. 41, Mot. to Intervene by AEC ("AEC Mot.") at 1.

Franklin Mountain Energy, LLC ("FME") is a Denver-based energy company that operates solely in Lea County, New Mexico.  ECF No. 53, Mot. to Intervene by FME ("FME Mot.") at 2.  FME alleges that its oil and gas permits are almost all challenged APDs and that it has already drilled or commenced drilling on more than half of the wells affected by the action.  *Id* at 3.

Petroleum Association of Wyoming ("PAW") is Wyoming's oldest petroleum industry trade association, which advocates for oil and gas companies and represents companies holding challenged APDs.  ECF No. 12, Mot. to Intervene by PAW ("PAW Mot.") at 2-3.

American Petroleum Institute ("API") is the primary national trade association of the oil and natural gas industry, representing approximately 600 companies in New Mexico and Wyoming.  ECF No. 20, Mot. to Intervene by API ("API Mot.") at 2.

New Mexico Oil and Gas Association ("NMOGA") is a coalition of more than 1,000 oil and gas companies and individuals that hold federal permits in New Mexico.  ECF No. 37, Mot. to Intervene by NMOGA ("NMOGA Mot.") at 1.

Finally, the State of Wyoming asserts property, regulatory, and economic interests in 322 of the challenged APDs, which implicate development interests on state lands.  ECF No. 27, Mot. to Intervene by State of Wyoming ("Wyoming Mot.") at 1.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 24, a prospective intervenor may intervene as of right if it:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. Pro. 24(a).  Because the prospective Defendant-Intervenors do not assert an unconditional right to intervene by federal statute, they must meet the requirements of Rule 24(a) to intervene as a matter of right.  The application of that provision rests in turn on the following four factors:

> (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (quotations omitted).

In addition, a prospective intervenor must have standing under Article III of the Constitution.  *Id*. at 731-32, and therefore must show that: (1) it has "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent," (2) there is "a causal connection between the injury and the conduct" being challenged, and (3) it is "likely" that "the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations omitted).  An organization or association may assert standing on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see, e.g.*, *Brady Campaign to Prevent Gun Violence v. Salazar*, No. CV 08-2243 (CKK), 2009 WL 10695780, at *2 (D.D.C. Apr. 8, 2009) (holding that the NRA had standing to intervene on behalf of its members to defend a Department of the Interior rule allowing concealed firearms in national parks and wildlife refuges because the NRA's membership included "persons who intend to carry their loaded, concealed, and operable firearms in national parks and wildlife refuges").

### III.   ANALYSIS

All nine movants satisfy the conditions necessary for both standing and intervention under Rule 24(a).

### A.   Article III Standing

Injury in fact results when "a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015); *see, e.g.*, *Friends of Animals v. Ashe*, 2015 WL 13672461, at *1, 3 (D.D.C. June 12, 2015) (concluding that individuals who stood to benefit from challenged hunting permits issued by the U.S. Fish and Wildlife Service had standing to intervene as of right).

Prospective intervenors Oxy, Chevron, PPRR, AEC, and FME directly benefit from the challenged APDs. Collectively, they hold hundreds of challenged APDs and have commenced drilling or intend to drill in New Mexico or Wyoming. Accordingly, they aver that the relief Plaintiffs seek will result in the loss of property interests and financial investments in their permits, which in some instances represent millions or even hundreds of millions of dollars. Oxy Mot. at 6-8; Chevron Mot. at 5-9; PPRR Mot. at 5-6; AEC Mot. at 5; FME Mot. at 3. Because these prospective intervenors benefit from the approval of the APDs and would lose that benefit in the event of an unfavorable decision, they satisfy the requirements for injury in fact. And because a

favorable decision from this court would preserve that benefit, they satisfy the causation and redressability requirements as well. As a result, all five movants have standing to intervene.

Associations PAW, API, and NMOGA have standing on behalf of their members. Each represents oil and gas companies who participate in the federal leasing and permitting process in Wyoming or New Mexico. Those member companies hold challenged APDs and have invested significantly in oil and gas production pursuant to the APDs—establishing the same injury in fact as the first five movants. PAW Mot. at 3, 5-8; API Mot. at 4, 5; NMOGA Mot. at 6. One of the associations' key purposes is to represent their members' interests in the challenged APDs, including by defending their approvals. *See* PAW Mot. at 5-8; API Mot. at 3 n. 2. There is no reason to believe that the participation of their individual members is required to do so. *Cf. Buffalo Field Campaign v. Williams*, 579 F. Supp. 3d 186, 195 (D.D.C. 2022), *appeal dismissed sub nom. Buffalo Field Campaign v. Haaland*, No. 22-5064, 2022 WL 2135456 (D.C. Cir. June 14, 2022) (holding that plaintiffs had the requisite "suitability of an associational action" given that "naming an individual member would do nothing to facilitate an appropriate remedy"). And, as NMOGA notes, "a favorable outcome will redress potential injuries because [the association's] members will be able to continue" their production activities. NMOGA Mot. at 9. As a result, the three association movants possess the requisite standing as well.

Lastly, Wyoming also benefits from approval of the challenged APDs. Wyoming states that 322 of the challenged APDs are on Wyoming state lands or involve state interests. Wyoming Mot. At 3. It also notes that it has expended significant resources to regulate the use of private, state, and federal land, and to review and approve requests for state APDs, which is often a required step before applicants can apply for federal APDs. *Id*. at 4. Finally, it observes that it receives 48% of the royalties from wells on federal land in Wyoming, 809 of which are challenged. *Id*. at

5-6, 1. Wyoming uses this revenue to fund local governments and schools. *Id*. at 5-6. Accordingly, Wyoming affirms that its property, regulatory, and economic interests are at stake if Conservation Groups succeed in their claims. *Id*. at 3-6. Those interests, along with their causal connection to the challenged APDs and redressability by a favorable decision, sufficiently demonstrate Wyoming's standing.

### B. Four Elements Necessary to Intervene as of Right

The court concludes that all prospective Defendant-Intervenors may intervene as of right under Rule 24(a)(2). Each of the four relevant factors supports that conclusion.

#### 1. Timeliness of Motion

A motion to intervene must be timely filed. *See NAACP v. New York*, 413 U.S. 345, 365 (1973). Courts determine timeliness by "weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (internal citations and quotation marks omitted). That determination accounts for the stage of litigation at which intervention is sought. *See, e.g., Butte Cnty., CA v. Hogen*, No. CIV.A.08-519 HHK AK, 2008 WL 2410407, at *2 (D.D.C. June 16, 2008) (holding that because the case was in its "infancy" and because the plaintiff did not oppose the motion, intervention was timely); *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 19-CV-746 (TSC), 2020 WL 12967765, at *2 (D.D.C. Apr. 17, 2020) (determining that a motion to intervene was timely because the administrative record had not been submitted, nor had briefing deadlines been scheduled). Whether too much time has elapsed "is measured from when the prospective intervenor knew or should have known that any of its rights would be directly affected by the litigation." *Roeder v. Islamic Republic of Iran*, 333 F.3d

228, 233 (D.C. Cir. 2003) (concluding that a motion to intervene filed four years after the complaint was untimely).

Here, the prospective intervenors filed their motions within a few months after the original complaint was filed, and weeks before the Plaintiffs filed their amended complaint and Defendants filed their answer to that amended complaint.  Briefing has not yet begun in earnest, *Defs. of Wildlife*, 2020 WL 12967765 at *2, and none of the current parties have opposed the intervention as untimely, *Hogen*, 2008 WL 2410407 at *2.  Under these circumstances, neither Plaintiffs nor Defendants have been prejudiced.  *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010) (holding that plaintiffs were not prejudiced when a prospective defendant-intervenor filed a motion to intervene weeks before the plaintiffs' amended complaint and the federal defendants' answer).

        2.        Interest and Standing

The second factor is a prospective intervenor's "interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2).  Constitutional standing sufficiently demonstrates this interest.  *Red Lake Band of Chippewa Indians v. United States Army Corps of Eng'rs*, 338 F.R.D. 1, 5 (D.D.C. 2021).

All prospective Defendant-Intervenors have asserted such interests.  As discussed above, Oxy, Chevron, PPRR, AEC, and FME have standing to sue on their own behalf.  Were Defendants enjoined from taking further action on the approved APDs, these prospective intervenors would lose property interests and financial investments in their permits.  Oxy Mot. at 6-8; Chevron Mot. at 5-9; PPRR Mot. at 5-6; AEC Mot. at 5; FME Mot. at 3.  Likewise, associations PAW, API, and NMOGA have standing on behalf of their members and a corresponding interest in the action.  As discussed above, should Plaintiffs obtain injunctive relief, the APDs would be "void", and PAW, API, and NMOGA members would lose their

respective substantial property and economic investments. PAW Mot. at 10; API Mot. at 5; NMOGA Mot. at 5. In Wyoming's case, were Plaintiffs' claims to succeed, the State would lose significant property and regulatory interests, as well as substantial revenue. Wyoming Mot. at 3-6. Therefore, this factor also supports the movants' intervention.

3. <u>Impairment of Interest</u>

The third factor is whether a prospective intervenor is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2).

The prospective intervenors here are so situated. Plaintiffs ask the court, among other things, to vacate the challenged approved APDs and enjoin Defendants from "approving or otherwise taking action to approve any applications for permits to drill on federal public lands and minerals until Defendants have fully complied with" NEPA, ESA, and FLPMA. Amend. Compl. at 64. That relief would void any approved APDs held by Oxy, Chevron, PPRR, and FME, as well as those held by the members of PAW, API, and NMOGA, preventing those companies from seeing a return on investments they made in infrastructure, equipment, and personnel. It would also prevent Wyoming from exercising its property and economic interests in any APDs that affect its state lands or its revenue from federal lands.

4. <u>Adequacy of Representation</u>

The fourth factor is whether the existing parties to the action adequately represent the prospective intervenors' interests. *Red Lake Band of Chippewa Indians*, 338 F.R.D. at 6. This factor is "not onerous," and generally allows parties to intervene unless the adequacy of representation is "clear." *Fund For Animals*, 322 F.3d at 735 (internal citations and quotation marks omitted). "Governmental entities generally cannot represent the more narrow and

parochial financial interests" of private parties. *Wildearth Guardians*, 272 F.R.D. at 15; *see also Fund for Animals*, 322 F.3d at 737; *Dimond v. D.C.*, 792 F.2d 179, 193 (D.C. Cir. 1986).

The prospective intervenors here have demonstrated that no existing parties adequately represent their interests. Oxy, Chevron, PPRR, AEC, and FME aver that while Defendants' interests are the regulation and management of public lands, the companies' interests lie with their property and financial investments in their specific APDs. Oxy Mot. at 9; Chevron Mot. at 10; AEC Mot. at 12; *see Fund for Animals*, 322 F.3d at 737. Likewise, they observe that their "business interests" are narrower than the government's interest in protecting the public. *See* PPRR Mot. at 8; AEC Mot. at 11; FME Mot. at 8. The associations API, PAW, and NMOGA assert the same points on behalf of their members. API Mot. at 13; PAW Mot. at 5; NMOGA Mot. at 5. For its part, Wyoming contends that Defendants do not have an interest in protecting Wyoming's property and economic interests in state land. Wyoming Mot. at 14. These facts suffice for intervention under this factor, too.

## IV.   CONCLUSION

The court will therefore GRANT prospective Defendant-Intervenors' Motions to Intervene: ECF No. 8; ECF No. 12; ECF No. 17; ECF No. 20; ECF No. 27; ECF No. 32; ECF No. 37; ECF No. 41; and ECF No. 53.

Date: November 9, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge