**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Center for Biological Diversity, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:22-cv-1716 (TSC) |
| U.S. Department of the Interior, et al., | |
| Defendants. | |

**DEFENDANT-INTERVENORS PETROLEUM ASSOCIATION OF WYOMING,
ANSCHUTZ EXPLORATION CORPORATION, AND PEAK POWDER RIVER
RESOURCES, LLC'S MOTION TO SEVER AND TRANSFER**

Defendant-Intervenors Petroleum Association of Wyoming ("PAW"), Anschutz

Exploration Corporation ("AEC"), and Peak Powder River Resources, LLC ("PPRR") (together,

"Wyoming Defendant-Intervenors") request that the Court sever the claims challenging the

Bureau of Land Management's ("BLM") approval of the Wyoming applications for permits to

drill ("permits" or "APDs") and transfer them to the U.S. District Court for the District of

Wyoming ("District of Wyoming").

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND .............................................................................. 3

III. LEGAL STANDARDS ....................................................................................... 6

IV. ARGUMENT ...................................................................................................... 7

    A. The Court Should Sever the Wyoming Claims ........................................ 7

        1. The Wyoming and New Mexico permits do not arise out of the same transaction or occurrence ................................................ 8

        2. Any common issues of fact and law are overshadowed by the fact-intensive analysis required to assess Plaintiffs' claims ........................... 11

        3. Severance would promote judicial economy and the efficient resolution of the dispute .......................................................... 13

        4. The availability of witnesses and evidentiary proof also favors severance ............................................................................... 14

        5. Severance will not result in confusion, undue delay, or prejudice to any party or the Court ........................................................... 15

    B. The Wyoming Claims Should Be Transferred to the U.S. District Court for the District of Wyoming .......................................................................... 16

        1. Plaintiffs could have brought this action in the District of Wyoming ............................................................................... 16

        2. Public interests weigh in favor of transferring the Wyoming claims to the District of Wyoming ................................................... 17

        3. Private interests weigh in favor of transferring the Wyoming claims to the District of Wyoming ................................................... 21

            a. Plaintiffs' choice of forum merits little deference ....................... 21

            b. Wyoming Defendant-Intervenors' choice of forum weighs in favor of transfer .................................................... 23

            c. Nexus of claims to Wyoming favors transfer to the District of Wyoming ................................................................. 24

            d. The convenience of the parties, witnesses, and ease of access to evidence favor transfer ................................................. 24

V. CONCLUSION ................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al-Ahmed v. Chertoff*,
564 F. Supp. 2d 16 (D.D.C. 2008) ....................................................................18, 22

*Bourdon v. United States Dep't of Homeland Sec.*,
235 F. Supp. 3d 298 (D.D.C. 2017) ..............................................................................21

*C.G.B. v. Wolf*,
464 F.Supp.3d 174 (D.D.C. 2020) ...........................................................................8, 10

*Crews v. Carson*,
No. 19-cv-3538, 2020 WL 12948520 (D.D.C. Oct. 16, 2020) ................................10

*Ctr. for Biological Diversity v. Bernhardt*,
No. 20-cv-860, 2020 U.S. Dist. LEXIS 260725 (D.D.C. Nov. 28, 2020) ...............19

*Davidson v. District of Columbia*,
736 F.Supp.2d 115 (D.D.C. 2010) ...............................................................................8

*Dine Citizens Against Ruining Our Env't v. Bernhardt*,
923 F.3d 831 (10th Cir. 2019) ................................................................................3, 9

*Greater Yellowstone Coalition v. Bosworth*,
180 F. Supp. 2d 124 (D.D.C. 2001) ............................................................................22

*Gulf Restoration Network v. Jewell*,
87 F. Supp. 3d 303 (D.D.C. 2015) .......................................................................13, 23

*In re Papst Licensing GmbH & Co. KG Litig.*,
967 F. Supp. 2d 63 (D.D.C. 2013) .........................................................................1, 9

*Initiative & Referendum Inst. v. U.S. Postal Serv.*,
154 F. Supp. 2d 10 (D.D.C. 2001) ..............................................................................17

*Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior*,
669 F. Supp. 2d 88 (D.D.C. 2009) .......................................................................17, 18

*Kaul v. Fed'n of State Med. Bds.*,
No. 19-cv-3050, 2020 WL 7042821 (D.D.C. Dec. 1, 2020) ........................6, 11, 18

*Khanna v. State Bar of Cal.*,
No. C-07-2587 EMC, 2007 U.S. Dist. LEXIS 59945 (N.D. Cal. Aug. 7, 2007)....................17

*Lane v. Tschetter*,
No. 05-cv-1414, 2007 WL 2007493 (D.D.C. July 10, 2007) ................................13

*Montgomery v. STG Int'l, Inc.*,
532 F. Supp. 2d 29 (D.D.C. 2008) .........................................................8, 11

*Moulvi v. Safety Holdings, Inc.*,
No. 20-cv-0595, 2021 WL 4494191 (E.D. Va. 2021) .............................................15

*Nat'l Ass'n of Home Builders v. U.S. EPA*,
675 F. Supp. 2d 173 (D.D.C. 2009) ...........................................................24

*Nat'l Wildlife Fed'n v. Harvey*,
437 F. Supp. 2d 42 (D.D.C. 2006) ......................................................6, 7, 18

*\*Neema v. Cuccinelli*,
No. 20-cv-3131, 2021 WL 3196037 (D. Neb. Jan. 13, 2021) ...............................14, 15

*\*M.M.M. on behalf of J.M.A. v. Sessions*,
319 F. Supp. 3d 290 (D.D.C. 2018) ...............................................6, 7, 8, 16, 17

*\*Pasem v. U.S. Citizenship & Immigration Servs.*,
No. 20-cv-344, 2020 WL 2514749 (D.D.C. May 15, 2020)........................................ *passim*

*Pinson v. U.S. Dep't of Justice*,
74 F. Supp. 3d 283 (D.D.C. 2014) .........................................................6, 8, 16

*Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*,
893 F. Supp. 2d 49 (D.D.C. 2012) ...........................................................22

*Radtke v. Caschetta*,
No. 06-cv-2031, 2007 WL 1438488 (D.D.C. May 15, 2007), *order vacated in part on other grounds on reconsideration*, No. 06-cv2031, 2007 WL 2071700 (D.D.C. July 17, 2007)...........................................................15

*S. Utah Wilderness All. v. Lewis*,
845 F. Supp. 2d 231 (D.D.C. 2012) .......................................................19, 20

*Shawnee Tribe v. United States*,
298 F. Supp. 2d 21 (D.D.C 2002) ...........................................................24

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988).............................................................................7

*Tex. Farmers Ins. Co. v. Louisiana-Pac. Corp.*,
   321 F.R.D. 561 (E.D. Tex. 2017)......................................................11, 12

*Theodore Roosevelt Conservation P'ship v. Salazar*,
   616 F. 3d 497 (D.C. Cir. 2010) .................................................................4

\**Trout Unlimited v. U.S. Dep't of Agric.*,
   944 F. Supp. 13 (D.D.C. 1996)......................................7, 18, 19, 21

*Umbert v. United States*,
   No. 18-cv-1336 (TSC), 2019 WL 4305576 (D.D.C. Sept. 11, 2019)................6, 13

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ...................................................................6

*W. Org. of Res. Councils v. BLM*,
   591 F. Supp. 2d 1206 (D. Wyo. 2008)...............................................9

*W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*,
   CV 16-21-GF-BMM, 2018 WL 9986684 (D. Mont. July 31, 2018)................4

*W. Watersheds Project v. Pool*,
   942 F. Supp. 2d 93 (D.D.C. 2013) .................................................23

*W. Watersheds Project v. Tidwell*,
   306 F. Supp. 3d 350 (D.D.C. 2017) ...............................................16

\**W. Watersheds Project v. Vilsack*,
   No. 21-cv-3056 (CRC) (D.D.C. Sept. 20, 2022), ECF No. 28
   (Memorandum Opinion and Order) ..................................................16

*Weinberger v. Tucker*,
   391 F. Supp. 2d 241 (D.D.C. 2005) ...............................................16

**Statutes**

28 U.S.C. § 1391(b)(2) ..............................................................16, 17

28 U.S.C. § 1391(e) ................................................................16, 17

28 U.S.C. § 1404(a) ...........................................................1, 6, 7, 16, 17

43 U.S.C. § 1712.......................................................................3

Administrative Procedure Act 5 U.S.C. § 551–559.............................1,3 14, 19, 24

-iv-

Endangered Species Act, 16 U.S.C. §§ 1531–44 ................................................................2, 12, 13

Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–1787 ...........................2, 3, 12, 13

National Environmental Policy Act, 42 U.S.C. §§ 4321–4370m-11 ..................................... Passim

Wyo. Stat. Ann. § 9-4-218 ...............................................................................................................20

Wyo. Stat. Ann. § 9-4-218(a)(viii) ..................................................................................................20

**Regulations**

40 C.F.R. § 1501.9 .............................................................................................................................4

40 C.F.R. § 1502.1 .............................................................................................................................4

40 C.F.R. § 1508.1 .............................................................................................................................5

43 C.F.R. § 1601.0-2 ..........................................................................................................................3

43 C.F.R. § 1601.0-4 ..........................................................................................................................4

43 C.F.R. § 1601.0-5 ..........................................................................................................................3

43 C.F.R. § 1601.0-6 ..........................................................................................................................3

43 C.F.R. § 1610.3-1 ........................................................................................................................20

43 C.F.R. § 1610.3-2 ........................................................................................................................20

43 C.F.R. § 1610.5-3 ..........................................................................................................................5

43 C.F.R. § 1691.0-8 ..........................................................................................................................4

43 C.F.R. § 2162.5-1 ..........................................................................................................................5

43 C.F.R. § 3162.3-1 ..........................................................................................................................5

80 Fed. Reg. 57639 (Sept. 24, 2015) ................................................................................................4

83 Fed. Reg. 67542 (Nov. 14, 2008) .................................................................................................4

84 Fed. Reg. 65999 (Dec. 2, 2019) ...................................................................................................4

87 Fed. Reg. 59818 (Oct. 3, 2022) ....................................................................................................4

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 19 ...........................................................................................................1

Fed. R. Civ. P. 20 ......................................................................................................6, 8

Fed. R. Civ. P. 21 .......................................................................................1, 6, 7, 16, 17

**Other Authorities**

*Roswell Resource Management Plan*,
    DOI-BLM-NM-P010-1995-0001-RMP-EIS (Oct. 10, 1997) ....................................5

*U.S. District Courts Federal Court Management Statistics–Profiles—During the*
    *12-Month Periods Ending June 30, 2017 Through 2022*, U.S. District Courts
    (Jun. 30, 2022), available at
    https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.
    pdf ......................................................................................................................18

## I.     INTRODUCTION

As threshold matter, AEC and PPRR join in the Consolidated Motion to Dismiss, ECF No. 84, and have filed addenda to that motion regarding the Court's lack of personal jurisdiction over AEC and PPRR.[1] If the Court does not dismiss the case for the reasons set out in that motion and its addenda, it nevertheless should not adjudicate this lawsuit in its entirety. Because the better venue for adjudicating Plaintiffs' challenges to BLM's Wyoming permitting decisions is the District of Wyoming, the Court should sever those challenges under Rule 21 and transfer them to the District of Wyoming under 28 U.S.C. § 1404(a).[2]

Plaintiffs, a coalition of four non-profit organizations—Center for Biological Diversity, WildEarth Guardians, Citizens Caring for the Future, and New Mexico Interfaith Power and Light (together, "Plaintiffs")—challenge the federal government's approval of more than 4,000 applications for permits for oil and gas on federal lands in Wyoming's Powder River Basin and New Mexico's Permian Basin. Am. Compl. ¶ 1. Plaintiffs challenge BLM's approvals of the same type of permits in both states. But the similarities largely stop there.

The Court should sever Plaintiffs' challenges to the Wyoming permits because they are factually distinct from the challenges to the New Mexico permits. *See In re Papst Licensing*

---

[1] As explained in AEC's and PPRR's addenda to the Consolidated Motion to Dismiss, because Plaintiffs seek to cancel AEC's and PPRR's permits, AEC and PPRR are required parties under Federal Rule of Civil Procedure 19. But AEC and PPRR cannot be joined for lack of personal jurisdiction and improper venue. So even if the Court were to decline to sever and transfer the challenges to the Wyoming permits, the Court should still dismiss Plaintiffs' challenges to AEC's and PPRR's permits.

[2] The same reasons why the Court should sever and transfer Plaintiffs' challenges to the Wyoming permits to the District of Wyoming apply to Plaintiffs' challenges to the New Mexico permits. But because the Wyoming Defendant-Intervenors do not have any New Mexico permits or interests, they leave it to other parties with interests in New Mexico to formally request that relief.

*GmbH & Co. KG Litig.*, 967 F. Supp. 2d 63, 71 (D.D.C. 2013) ("Where claims arise from distinct sets of facts, they may be severed even though they rely on the same legal theory."). Officials in BLM's Buffalo and Casper Field Offices, located in the District of Wyoming, made the decisions to approve the Wyoming permits. Am. Compl. ¶¶ 102–03. By contrast, different officials in BLM's Carlsbad and Roswell Field Offices, located in the District of New Mexico, made the decisions to approve the New Mexico permits. *Id.* Because different officials in different states made the permit-approval decisions, the sufficiency of each decision-making process must be assessed independently. Moreover, the records for the Wyoming permits differ from the records for the New Mexico permits. And each field office's agency action approving each individual permit is a unique action that addresses factual and legal issues idiosyncratic to that permit. Additionally, the local conditions and considerations influencing BLM's analyses and permit decisions in one state are distinct from those in the other. *See* ECF No. 73 at (referencing "administrative records" rather than a single "administrative record").

Plaintiffs devote separate paragraphs of the Amended Complaint to discussing the regional specificities of Wyoming and New Mexico, *see, e.g.*, Am. Compl. ¶¶ 145–46, 150–51, 174–79 (Wyoming); *id.* ¶¶ 139–44, 149, 171–73 (New Mexico). Yet, Plaintiffs attempt to tether the thousands of discrete BLM decisions underlying their claims by enveloping them in an overarching legal theory that the four field offices generally failed to act in accordance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370m-11, the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701–1787. Plaintiffs' approach, however, ignores that each of the 4,000-plus permits subject to Plaintiffs' challenges stands on its own merits. Plaintiffs chose

to lump all the permit decisions together—but avoid that each permit approval is a factually distinct, separate agency action. Plaintiffs' challenges to each of these actions will be resolved based on the unique facts underlying each action, found in the separate administrative records related to each action. *See, e.g.*, *Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 844–45 (10th Cir. 2019) ("[I]n order to evaluate the sufficiency of the BLM's NEPA analyses, we would need the complete [basin-specific] EIS and the complete EA for each challenged [permit].""). Therefore, in the interest of judicial efficiency, the Wyoming-based claims should be severed from the New Mexico-based claims.

Once severed, transfer of the Wyoming permit claims to the District of Wyoming is warranted for many of the same reasons. Wyoming is an appropriate venue for Plaintiffs' challenges to the Wyoming permits, and it is in the interests of both the private parties and the public to have challenges to Wyoming decisions about Wyoming permits resolved by a Wyoming court familiar with the substantive issues and claims and located near the potentially impacted communities.

## II.    FACTUAL BACKGROUND

Although the process by which BLM approves permits must comply with federal law, it is a local process performed by the local BLM field office for each permit within that field office's jurisdiction. Under FLPMA, BLM develops and issues resource management plans ("RMPs") to guide and control future management of public lands. 43 U.S.C. § 1712; 43 C.F.R. § 1601.0-2. An RMP may identify lands available for leasing, define resource use, and prescribe levels of oil and gas production. 43 C.F.R. § 1601.0-5(n). An RMP is a major federal action that triggers an Environmental Impact Statement ("EIS") under NEPA. 43 C.F.R. § 1601.0-6.

The NEPA EIS process begins with "scoping," which initiates participation by the public, tribal governments, local and state governments, and other federal agencies. 40 C.F.R. § 1501.9; 43 C.F.R. § 1691.0-8. The EIS identifies reasonable alternatives to the proposed action and associated impacts, and potential mitigation measures. 40 C.F.R. § 1502.1; *see Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 503 (D.C. Cir. 2010).

Federal regulations direct local field managers in BLM field offices—those most familiar with the local oil and gas industry, local activities, and local conditions—to prepare RMPs, amendments, revisions, and related environmental analysis. 43 C.F.R. § 1601.0-4. State directors provide quality control and supervisory review, and finalize RMPs and associated environmental analyses. *Id.* The Secretary of the Interior and BLM Director provide national-level policy and procedure oversight. *Id.*

The process for revising an RMP often takes years and final RMPs are lengthy. For example, it took BLM nearly seven years to prepare the 2,955-page Buffalo, Wyoming RMP, which was then subject to litigation and further revisions. *See* Notice of Intent to Revise a RMP for the Buffalo Field Office, Wyoming, and Prepare an Associated EIS, 83 Fed. Reg. 67542 (Nov. 14, 2008); Notice of Availability of ROD, 80 Fed. Reg. 57639 (Sept. 24, 2015); *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*, CV 16-21-GF-BMM, 2018 WL 9986684 (D. Mont. July 31, 2018) (requiring BLM to prepare a supplemental EIS to remedy deficiencies in the Buffalo RMP); Notice of Availability of the ROD and Approved Amendment to the RMP for the Buffalo Field Office, Wyoming, 84 Fed. Reg. 65999 (Dec. 2, 2019); Notice of Intent to Amend the RMPs for the Buffalo Field Office, Wyoming, and Miles City Field Office, Montana, and Prepare Associated Supplemental EIS, 87 Fed. Reg. 59818 (Oct. 3, 2022).

BLM offers leases for oil and gas development on public lands consistent with each RMP. 43 C.F.R. § 1610.5-3. Before a lessee commences operations to develop oil and gas on leased lands, the lessee must submit a permit application to the relevant BLM field office for review and approval. 43 C.F.R. § 3162.3-1(c). The BLM field office then confirms that the permit complies with the relevant RMP and undertakes additional NEPA analysis. 43 C.F.R. § 2162.5-1(a). The NEPA analysis at each stage may "tier" off previous analyses, that is, incorporate by reference prior relevant analysis. 40 C.F.R. § 1508.1(ff).

BLM has issued separate RMPs for each of the four field offices implicated in this litigation: Buffalo, Wyoming; Casper, Wyoming; Carlsbad, New Mexico; and Roswell, New Mexico. Am. Compl. ¶¶ 171–79; *Roswell Resource Management Plan*, DOI-BLM-NM-P010-1995-0001-RMP-EIS (Oct. 10, 1997).[3] The U.S. Fish & Wildlife Service issued separate biological opinions examining local effects of the Buffalo, Casper, Carlsbad, and Roswell RMPs. Am. Compl. ¶¶ 171–79; Roswell Resource Management Plan, DOI-BLM-NM-P010-1995-0001-RMP-EIS. Each BLM field office relies on the relevant RMP's environmental analyses and NEPA during the leasing process. Each BLM field office employs its own local decision-makers. And each BLM field office considers locally relevant underlying factual and legal considerations when deciding to approve permits. In short, by design, each permit approval is a local decision, with local considerations, and local impact.

---

[3] Plaintiffs do not include a discussion of or reference to the Roswell RMP or biological opinion in the Amended Complaint. *See* Am. Compl. ¶¶ 171–79. Because Plaintiffs challenge seven permit approvals from the Roswell Field Office, Wyoming Defendant-Intervenors include a reference here to the Roswell documents. *See id.* ¶ 103.

## III.    LEGAL STANDARDS

A court may sever any claim against a party under Rule 21. Fed. R. Civ. P. 21. Courts

consider multiple factors in determining whether severance is appropriate, including:

(1) whether the claims arise out of the same transaction or occurrence;
(2) whether the claims present common questions of law or fact;
(3) judicial economy, multiplicity of litigation, and orderly and efficient
    resolution of disputes;
(4) the availability of witnesses and other evidentiary proof; and
(5) the potential for confusion, undue delay, or prejudice to any party.

*See M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 295 (D.D.C. 2018).

Ultimately, severance under Rule 21 is within a court's discretion, and a court may sever for any

sufficient reason. *Pasem v. U.S. Citizenship & Immigration Servs.*, No. 20-cv-344, 2020 WL

2514749, at *4 (D.D.C. May 15, 2020).[4]

Similar principles govern a court's decision whether to transfer. Under 28 U.S.C.

§ 1404(a), courts have broad discretion to transfer to a different district court "[f]or the

convenience of parties and witnesses, in the interest of justice" and to "prevent the waste of time,

energy and money, and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense." 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 616

(1964) (internal quotation marks omitted); *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42,

---

[4] To assess severance, courts frequently refer to the permissible joinder requirements of Rule 20(a). *Pinson v. U.S. Dep't of Justice*, 74 F. Supp. 3d 283, 288–89 (D.D.C. 2014). Rule 20(a) allows joinder of claims only if (1) the claims arise out of the same transaction or occurrence; and (2) there are common questions of law or fact as to all plaintiffs. *Id.; Kaul v. Fed'n of State Med. Bds.*, No. 19-cv-3050, 2020 WL 7042821, at *7 (D.D.C. Dec. 1, 2020); *see* Fed. R. Civ. P. 20. Courts liberally construe Rule 20(a), erring on the side of convenience and judicial economy. *Umbert v. United States*, No. 18-cv-1336 (TSC), 2019 WL 4305576, at *4 (D.D.C. Sept. 11, 2019). Improper joinder is not required for severance; even if claims are properly joined under Rule 20, a court may sever claims for any "sufficient" reason. *Pasem*, 2020 WL 2514749, at *4.

45 (D.D.C. 2006). Motions to transfer under Section 1404(a) are evaluated on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

Courts first resolve whether the proposed transferee district is proper. *See* 28 U.S.C. § 1404(a) ("a district court may transfer any civil action to any other district or division where it might have been brought"). Courts then assess whether "convenience of the parties, the convenience of the witnesses, and the interests of justice" favor transfer. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). This second inquiry weighs both public and private interests. *Nat'l Wildlife Fed'n*, 437 F. Supp. 2d at 46. The moving party must establish that the plaintiff could and should have brought the action in the proposed transferee court. *Pasem*, 2020 WL 2514749, at *2.

## IV.  ARGUMENT

### A.  The Court Should Sever the Wyoming Claims

The Rule 21 factors weigh in favor of severance, primarily because the Wyoming permit claims do not arise out of the same transaction or occurrence as the New Mexico permit claims. *See M.M.M.*, 319 F. Supp. 3d at 297 (weighing the severance factors and determining severance was appropriate to "materially advance the fair administration of justice"). In addition, efficient resolution of the case, availability of witnesses and other proof, and convenience of the parties and affected public weigh heavily in favor of severance. *Id.* at 295.

Given the distinct records and underlying facts for the two categories of claims, the Court will have no difficulty segregating the claims into two cases. And doing so would promote the efficient resolution of the disputes for the courts and the parties, who can focus on the claims as

they apply uniquely to them. Severing the claims and transferring them to the District of Wyoming also would best serve the effective, straight-forward resolution of the Wyoming-based permits because their adjudication will have little or nothing to do with the New Mexico permit approval decisions. *See M.M.M.*, 319 F. Supp. 3d at 295 (noting that courts faced with a motion to sever will consider other factors, including "concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes" and "the availability of witnesses and other evidentiary proof"). For these reasons, the Court should sever Plaintiffs' challenges to the Wyoming permits.

               1.      <u>The Wyoming and New Mexico permits do not arise out of the same transaction or occurrence</u>

Claims arise out of the same transaction or occurrence when they are logically related. *Kaul v. Fed'n of State Med. Bds.*, No. 19-cv-3050, 2020 WL 7042821, at *7 (D.D.C. 2020); *Pinson*, 74 F. Supp. 3d at 289. The "logically related" test is flexible with an "impulse . . . toward entertaining the broadest possible scope of action consistent with fairness to the parties." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 35 (D.D.C. 2008) (internal quotation marks omitted). Nonetheless, "the logical relationship test does not give the court license to disregard the 'common transaction or occurrence' requirement of Rule 20(a)." *Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 121 (D.D.C. 2010). Rather, to be logically related, there must be "substantial evidentiary overlap in the facts giving rise" to plaintiffs' claims; "[s]tated differently, Plaintiffs' claims must share an aggregate of operative facts." *C.G.B. v. Wolf,* 464 F. Supp. 3d 174, 208 (D.D.C. 2020) (internal quotation marks omitted) (denying joinder where movants failed to show a substantial overlap in their "context-dependent" claims).

Plaintiffs' claims challenging the Wyoming and the New Mexico permits do not arise out of the same transaction or occurrence because they share no substantial evidentiary overlap and there is no logical relationship between the Wyoming and New Mexico claims. Put simply, the Court should sever Plaintiffs' challenges to the Wyoming permits because they are factually distinct from the challenges to the New Mexico permits. *See In re Papst Licensing*, 967 F. Supp. 2d at 71 ("Where claims arise from distinct sets of facts, they may be severed even though they rely on the same legal theory."). Each permit approval is a separate agency action, requiring independent examination on its own administrative record. *See, e.g.*, *Dine Citizens*, 923 F.3d at 844–45 ("[I]n order to evaluate the sufficiency of the BLM's NEPA analyses, we would need the complete [basin-specific] EIS and the complete EA for each challenged [permit]."). Accordingly, BLM officials in the Buffalo and Casper Field Offices made the decisions to approve the Wyoming permits and different officials in BLM's Carlsbad and Roswell Field Offices made separate decisions to approve the New Mexico permits. Am. Compl. ¶¶ 102–03.

The records underlying the Wyoming permits differ from the records underlying the New Mexico permits. For example, the records for the Wyoming permits will tier to RMPs and EISs for BLM land in the Wyoming Powder River Basin, whereas the records for the New Mexico permits will tier to separate RMPs and EISs for different BLM land located roughly 1,000 miles away. The records for the Wyoming permits will include environmental assessments ("EAs") specific to each permit, and unique information concerning surface-use, drilling plans, and on-site inspections conducted for each permit. *See W. Org. of Res. Councils v. BLM*, 591 F. Supp. 2d 1206, 1234–35 (D. Wyo. 2008). The records for the New Mexico permits will contain the same types of unique and localized information specific to each New Mexico permit.

Similarly, the separate decisions made by different officials from different field offices on each permit record must be assessed independently. These independent decisions include the potential environmental, community, and species impacts associated with each permit and the level of consideration and accommodation those potential impacts might require in the permit review process. Although each BLM field office may follow similar decision-making processes, the factual record and considerations underlying each permit decision differs considerably between the Wyoming claims and the New Mexico claims. *See* ECF No. 73 (federal defendants acknowledge that the administrative records, and thus the decisions underlying each permit, are severable). In short, there will be little, if any, evidentiary or other factual overlap in the administrative records for issuance of the Wyoming and New Mexico permits, and none rising to the level of an "aggregate of operative facts" or "substantial evidentiary overlap." *See C.G.B.*, 464 F. Supp. 3d at 208.

Plaintiffs' repeated reference to "BLM" as the decision-maker does not cure the absence of a logical relationship among the facts underlying each permit. *See, e.g.*, Am. Compl. ¶ 3 ("BLM approved well over 4,000 APDs in the Permian and Powder River Basins"); *id.* ¶¶ 105–06 ("In its EAs for all the challenged APD approvals, BLM failed to take a hard look at greenhouse gas emissions and climate impacts . . . [and] environmental justice impacts."). Where multiple plaintiffs allege common claims against a defendant, "[g]enerally, courts have concluded that the failure to point to a common decision-maker amounts to a failure to meet the transactional relatedness test." *Crews v. Carson*, No. 19-cv-3538, 2020 WL 12948520, at *9 (D.D.C. Oct. 16, 2020) (quoting *Robinson v. Geithner*, No. 05-cv-1258, 2011 WL 66158 (E.D. Cal. Jan. 10, 2011)) (denying joinder of employment claims). Plaintiffs concede, as they must,

that each BLM field office is the decision-maker for only those permits located within the geographic boundaries of each field office. *See* Am. Compl. ¶¶ 102–03 & App. A.

The permit decisions of the Wyoming and New Mexico field offices will survive or fail on their own merits and distinct records, which amounts to a failure to meet the transactional relatedness test. This factor powerfully favors severing the Wyoming claims. *See Kaul*, 2020 WL 7042821, at *7 (joinder permitted "only if" claims arise out of same transaction or occurrence, and there are common questions of fact or law); *WildEarth Guardians v. U.S. Office of Surface Mining Reclamation & Enforcement*, No. 13-cv-518, 2014 U.S. Dist. LEXIS 16062, at *4–5 (D. Colo. Feb. 7, 2014) (severing and transferring claims challenging the NEPA sufficiency of seven separate mining permits in multiple states after concluding that plaintiffs' complaint constituted "as applied" challenges to individual agency decisions and where each challenge "will require the merits judge to review a separate and distinct administrative record for each agency decision").

> 2. Any common issues of fact and law are overshadowed by the fact-intensive analysis required to assess Plaintiffs' claims

Even if a court finds that claims share common facts and law, it may nonetheless use its discretion to sever the claims, particularly where adjudication of each claim requires a fact-intensive analysis irrelevant to the other claims. *Tex. Farmers Ins. Co. v. Louisiana-Pac. Corp.*, 321 F.R.D. 561, 564 (E.D. Tex. 2017) (severing claims where each claim required a fact-intensive analysis not relevant to other claims); *see also Montgomery*, 532 F. Supp. 2d at 35 (recognizing "joinder may be improper when employees at different locations allege similar discriminatory acts, but by different supervisors or at different times").

While the Wyoming-based and New Mexico-based claims may share some common issues of fact and law, they are limited in scope. This limited overlap does not weigh strongly in favor of keeping the claims in the same action. Plaintiffs acknowledge that the Wyoming and New Mexico permit approvals were made by different employees of different field offices, in different districts, in different states, under different resource management plans, leases, and records of decision accounting for different local considerations. *See* Am. Compl. ¶¶ 92, 102–03, 140, 145, 171–79 & App. A. Resolving the broader question of whether the Wyoming and New Mexico field offices violated NEPA, ESA, or FLPMA is heavily dependent on permit-specific facts that vary greatly between Wyoming and New Mexico.

For example, Plaintiffs claim that the field offices failed to take a hard look at environmental-justice considerations in issuing the permit approvals. But that claim depends on the permits at issue and whether there are environmental-justice-relevant populations located near the relevant public lands. Although Plaintiffs refer to specific environmental-justice populations in the New Mexico counties covered by the Carlsbad Field Office, they do not identify any environmental-justice communities located within the jurisdictional boundaries of the Buffalo or Casper Field Offices. Am. Compl. ¶¶ 147–52. This is but one example—evident on the face of the Amended Complaint—of the fact-dependent nature of Plaintiffs' claims.

Because Plaintiffs' claims require such fact-intensive analysis, the Court should sever the Wyoming claims despite any minimal common issues of fact or law. *See Tex. Farmers Ins. Co.*, 321 F.R.D. at 564; *WildEarth Guardians*, 2014 U.S. Dist. LEXIS 16062, at *8 (severing and transferring claims where "[a]rguments will be tailored to each individual mine" and "the propriety of each mine's approval will be established individually").

3.      Severance would promote judicial economy and the efficient resolution of the dispute

Severance would promote the efficient resolution of this dispute. *See Pasem*, 2020 WL 2514749, at *4. While some courts delay or deny severance because they determine that it is more efficient to keep claims joined at least through basic discovery, there is no similar efficiency here. *See, e.g.*, *Umbert*, 2019 WL 4305576, at *8 (finding severance premature); *Lane v. Tschetter*, No. 05-cv-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007) (same). As they must, Plaintiffs frame their NEPA, ESA, and FLPMA claims as violations of the Administrative Procedure Act, 5 U.S.C. §§ 551–559 ("APA"). *See* Am. Compl. ¶¶ 197, 202, 210, 215, 220. Thus, whichever federal court ultimately hears Plaintiffs' lawsuit will make its decision based on the administrative record for each permit approval. *Id.*; *see also Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 315 (D.D.C. 2015) (for APA cases decided on administrative record, there is no discovery). There is no efficiency rationale to postpone severance, whether for efficient early case management, discovery, or otherwise.

To the contrary, severing the claims now will create efficiencies for all the parties. First, assembling and reviewing the administrative records would be easier if it focused on only the claims as they relate to the permit decisions that affect relevant defendant-intervenors and relevant BLM field offices. The administrative records for only the Wyoming permit approvals will contain underlying documents for at least 894 permits. *See* Am. Compl. ¶ 103. This alone means thousands of documents. Indeed, the federal defendants have stated that "[g]iven Plaintiffs' allegations, the administrative records in this case would be voluminous" and "will take significant time to fully compile and produce." ECF No. 73 at 2, 4. It would be highly inefficient for Wyoming Defendant-Intervenors, the federal defendants, and the Court to review

many thousands of pages of documents to identify those portions related to the permit decisions affecting Wyoming Defendant-Intervenors' property, operations, or interests in BLM's Wyoming decisions. And vice versa for affected New Mexico interests. Severing the claims now would allow parties with interests in only one state to participate solely in the litigation implicating their actual interests, and likely guide efficient assembly of the voluminous administrative record, thus promoting a more orderly and efficient resolution of this dispute.

                4.      <u>The availability of witnesses and evidentiary proof also favors severance</u>

        The availability of witnesses and evidentiary proof also favors severance, particularly in conjunction with the request to transfer, discussed in Part IV.B, below. *See Pasem*, 2020 WL 2514749, at \*4. Although this is an APA case that will be decided on the administrative records, to the extent witnesses and evidence related to the Wyoming-centered claims are required, they likely will be located in Wyoming, not Washington D.C. These include BLM field-office officials, Wyoming Defendant-Intervenor company representatives, and Plaintiffs themselves.

        The Court may sever claims simply for convenience of the parties and to locate claims against the federal government in the federal districts from which those claims arise. Recently, two courts severed claims brought by multiple plaintiffs against the federal government concerning the processing time of certain immigration petitions at federal service centers located in different states. *Pasem*, 2020 WL 2514749, at \*4; *Neema v. Cuccinelli*, No. 20-cv-3131, 2021 WL 3196037, at \*3 (D. Neb. Jan. 13, 2021). Both courts decided it was more appropriate and convenient to adjudicate claims in the districts from which they arose. *Pasem*, 2020 WL 2514749, at \*4; *Neema*, 2021 WL 3196037, at \*3. The *Neema* court explained "[w]hile the [immigration] service centers may rely on similar politics and procedures," each facility had

different processing times, policies, procedures, and workflow, and the "evidence and potential witnesses . . . are in the districts where the service centers are located." *Neema*, 2021 WL 3196037, at *3. This precise situation exists here. While BLM officials issued the permit approvals in Wyoming and New Mexico using similar procedures, the underlying witnesses, administrative records, field offices, and factual circumstances are different. Accordingly, this Court should sever the Wyoming-based claims.

<blockquote>5. <u>Severance will not result in confusion, undue delay, or prejudice to any party or the Court</u></blockquote>

Finally, courts consider whether severance would cause undue delay, result in prejudice to Plaintiffs, or impose unwarranted burdens on the court. *See Moulvi v. Safety Holdings, Inc.*, No. 20-cv-0595, 2021 WL 4494191, at *11 (E.D. Va. 2021). Here, prompt severance avoids each of these adverse outcomes.

This motion has been filed early in the litigation. Generally, severance at an early stage does not unduly delay proceedings or prejudice any party. *See id.*; *Radtke v. Caschetta*, No. 06-cv-2031, 2007 WL 1438488, at *2 (D.D.C. May 15, 2007), *order vacated in part on other grounds on reconsideration*, No. 06-cv-2031, 2007 WL 2071700 (D.D.C. July 17, 2007) (finding that severing claims at the pleadings stage would not unduly prejudice any party or delay proceedings). Severance instead will expedite this litigation by focusing the claims and administrative records on what is relevant to each party. Early severance also allows orderly assembly of the voluminous administrative record.

Severance combined with transfer also will promote judicial efficiency because each action would include a smaller universe of parties and agency actions, and be narrowly focused on the specific facts of the case and the relevant legal considerations.

For each of these reasons, the Wyoming Defendant-Intervenors respectfully ask the Court to exercise its discretion under Rule 21 to sever the claims arising out of the Wyoming permit-approval decisions.

**B.    The Wyoming Claims Should Be Transferred to the U.S. District Court for the District of Wyoming**

Plaintiffs' challenges to the Wyoming permits could have been brought in the District of Wyoming, thereby favoring transfer.

1.    <u>Plaintiffs could have brought this action in the District of Wyoming</u>

A court may transfer a case to "any other district … where it might have been brought" by the plaintiff. 28 U.S.C. § 1404(a); *see Weinberger v. Tucker*, 391 F. Supp. 2d 241, 243 (D.D.C. 2005). Venue in an action against the federal government lies in any judicial district in which any defendant resides, the district in which a substantial part of the events or omissions giving rise to the claim occurred, or—if there is no real property involved in the action—where the plaintiff resides. 28 U.S.C. § 1391(e); *see W. Watersheds Project v. Tidwell*, 306 F. Supp. 3d 350, 357 (D.D.C. 2017). Venue as to any defendant-intervenor is proper in a judicial district where, among other things, a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

The Court first must consider whether the case could have been brought in the transferee district. *M.M.M.*, 319 F. Supp. 3d at 295.[5] Plaintiffs could have brought their claims challenging

---

[5] Where some, but not all, claims should be transferred to a particular transferee district, the court must first sever the claims into separate cases, so that one case may be transferred in full. *See id.*; *Pinson v. U.S. Dep't of Justice*, 74 F. Supp. 3d 283, 288 (D.D.C. 2014). Rule 21

the Wyoming permits in the District of Wyoming. Venue in the District of Wyoming is proper

both as to federal defendants and the Wyoming Defendant-Intervenors (1) because "a substantial

part of the events or omissions giving rise to the [Plaintiffs'] claim[s] occurred" in the District of

Wyoming, and (2) because "a substantial part of the property that is the subject of the action is

situated" in the District of Wyoming. 28 U.S.C. § 1391(b)(2), (e)(1)(B). There also are no

discernible personal-jurisdiction issues with the District of Wyoming as to Plaintiffs' challenges

to the Wyoming permits: all federal defendants are subject to personal jurisdiction there, as are

all Defendant-Intervenors with interests in the Wyoming permits. *See Intrepid Potash-New*

*Mexico, LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 93–94 (D.D.C. 2009) (discussing

personal jurisdiction in transferee district under similar circumstances).

Plaintiffs challenge 894 permits issued by two BLM field offices in Wyoming. Am.

Compl. ¶¶ 102–03. And the vast majority, if not all, of the decision-making on the Wyoming

permits occurred in the Wyoming field offices. Accordingly, both 28 U.S.C. § 1404(a) and 28

U.S.C. § 1391(e) authorize transfer.

> 2. <u>Public interests weigh in favor of transferring the Wyoming claims to the
> District of Wyoming</u>

The public interest weighs in favor of transferring the Wyoming claims out of this

District and to the District of Wyoming. Public-interest factors include: (1) transferee court's

---

"authorizes severance of any claim, even without a finding of improper joinder, where there are
sufficient other reasons … [such as] if they arise from different factual situations." *Khanna v.
State Bar of Cal.*, No. C-07-2587 EMC, 2007 U.S. Dist. LEXIS 59945, at *5 (N.D. Cal. Aug. 7,
2007); *see also Initiative & Referendum Inst. v. U.S. Postal Serv.*, 154 F. Supp. 2d 10, 13
(D.D.C. 2001) ("Claims against different parties can be severed for trial or other proceedings,
under Rule 21, if the Court determines in its discretion that the interests of justice would be
served by doing so."). "District courts have broad discretion in determining whether severance of
particular claims is warranted." *M.M.M.*, 319 F. Supp. 3d at 295.

familiarity with governing laws; (2) relative congestion of the transferor and transferee courts; and (3) "local interest in deciding local controversies at home." *Trout Unlimited*, 944 F. Supp. at 16.

The first factor is neutral because all federal courts are presumed to be equally familiar with federal law. *See Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 20 (D.D.C. 2008).

The second factor—relative congestion of the transferor and transferee courts—weighs in favor of transfer. *See Nat. Wildlife Fed'n*, 437 F. Supp. at 49. As of June 30, 2022, there were 901 cases pending in the District of Wyoming, and 6,015 cases pending in this District.[6] In the District of Wyoming, there are 300 pending cases per judgeship, and in this District, there are 401 pending cases per judgeship.[7] The District of Wyoming is less congested than this Court, weighing in favor of transfer. *See id.*

The final and most significant factor—interest in deciding local controversies at home— weighs strongly in favor of transferring the Wyoming-based claims to the District of Wyoming. Whether a controversy is local in nature depends, among other things, on "where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy" and whether any federal official in Washington D.C. was directly involved in the agency's decision. *Intrepid Potash*, 669 F. Supp. at 98–99 (finding that a controversy challenging a BLM field office's decision was local to New Mexico because BLM's decision was made in New Mexico, directly impacted New Mexico citizens, and did not directly

---

[6] *U.S. District Courts Federal Court Management Statistics–Profiles—During the 12-Month Periods Ending June 30, 2017 Through June 30, 2022*, U.S. District Courts (Jun. 30, 2022), available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf, 2 (District of Columbia), 86 (Wyoming).
[7] *Id.*

involve any federal official in the District of Columbia, and the land at issue was located in New Mexico).

Moreover, lawsuits concerning "environmental regulation[] and local wildlife" are local in nature and "should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit'" are located. *Trout Unlimited*, 944 F. Supp. at 19 (quoting *Adams v. Bell*, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983)); *see also Ctr. for Biological Diversity v. Bernhardt*, No. 20-cv-860, 2020 U.S. Dist. LEXIS 260725, at *4, *7 (D.D.C. Nov. 28, 2020) (transferring APA case from this Court to the District of Wyoming, where the agency's work primarily took place in Wyoming and the action "primarily concerns the use of federal lands in Wyoming"). Land and resource use is a matter of local interest because of its impacts on the surrounding community. *See Intrepid Potash*, 669 F. Supp. 2d at 99; *S. Utah Wilderness All. v. Lewis*, 845 F. Supp. 2d 231, 237–38 (D.D.C. 2012) ("The fact that this controversy will affect the use of discrete parcels of land counsels towards transfer to the judicial district where that land is located.").

Plaintiffs acknowledge local BLM officials in the Casper and Buffalo Field Offices made the decisions to issue the 894 Wyoming permits. Am. Compl. ¶ 103. They do not allege that any official in Washington D.C. was directly involved in issuing any of the permits. Plaintiffs allege that oil and gas activities pursuant to the approved permits negatively impact "relatively undeveloped landscapes" in each state and that BLM failed to take actions to prevent "undue degradation of public lands" in each state, thereby conceding the local nature of the controversy. Am. Compl. ¶¶ 4, 8, 30. They also allege that the Wyoming BLM field offices failed to adequately consider environmental-justice communities in Wyoming and acknowledge that these

environmental-justice considerations are distinct from those in New Mexico. *Id.* ¶¶ 147–52 (identifying environmental-justice communities of concern within the boundaries of the Carlsbad Field Office but not within the boundaries of the Buffalo or Casper Field Offices). The remedies Plaintiffs seek would impose drastic impacts on the State of Wyoming and its communities. This factor weighs heavily in favor of transfer of the Wyoming claims to the District of Wyoming. *See Intrepid Potash*, 669 F. Supp. 2d at 99; *S. Utah Wilderness All.*, 845 F. Supp. 2d at 237–38; *W. Watersheds Project v. Vilsack*, No. 21-cv-3056 (CRC) (D.D.C. Sept. 20, 2022), ECF No. 28 (Memorandum Opinion and Order) (transferring claims brought by environmental groups challenging the U.S. Forest Service's management of a prairie dog species on federal land located in Wyoming to the District of Wyoming) (attached as Exhibit 2).

Finally, Wyoming, its local governments, and its citizens all participate in, and are impacted by, BLM's land-use management, leasing, and permitting. *See, e.g.*, Wyo. Stat. Ann. § 9-4-218. In developing an RMP, BLM's Wyoming State Director seeks policy advice from the Wyoming governor. 43 C.F.R. § 1610.3-1. Resource management plans, amendments, and guidance should be generally consistent with state, local, and tribal policies and programs, and the Wyoming governor has authority to ensure these documents are consistent. 43 C.F.R. § 1610.3-2. Wyoming counties engage in the RMP process and are otherwise involved in BLM's land-use decisions. Wyo. Stat. Ann. § 9-4-218. Wyoming counties may develop local resource management plans to determine priorities for the use, development and protection of natural resources and land. Wyo. Stat. Ann. § 9-4-218(a)(viii). These county plans "serve as a basis for communicating and coordinating with the federal government and its agencies on land and natural resource management issues." *Id.* And Wyoming citizens recreate on public lands and

many are also employed by the oil and gas industry or work in positions that support the oil and gas industry. In short, the public interest factor strongly favors transfer to the District of Wyoming.

   3. <u>Private interests weigh in favor of transferring the Wyoming claims to the District of Wyoming</u>

  Private interests also weigh in favor of transferring the Wyoming-based claims to the District of Wyoming. To evaluate private interests, courts consider: "(1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." *Trout Unlimited*, 944 F. Supp. at 16.

   a. *Plaintiffs' choice of forum merits little deference*

  The Court need not afford much deference to Plaintiffs' choice of forum because it is not Plaintiffs' home forum. While courts typically afford some deference to a plaintiff's choice of forum, they "confer[] considerably less deference when it is not the plaintiff's home forum." *Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017). Plaintiff Center for Biological Diversity is headquartered in Tucson, Arizona; WildEarth Guardians is headquartered in Santa Fe, New Mexico; Citizens Caring for the Future is based in southeastern New Mexico; and New Mexico Interfaith Power and Light is based in Albuquerque, New Mexico. Am. Compl. ¶¶ 20–23. Moreover, the Amended Complaint does not suggest that any of Plaintiffs' members recreate or experience the alleged impacts of BLM decisions in Washington,

D.C. *See id.* ¶¶ 20–34. None of the Plaintiffs is at home in this District, and therefore Plaintiffs' forum selection is entitled to little if any deference by this Court.

Deference to Plaintiffs' chosen forum is further reduced because Washington D.C. has "no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (internal quotations omitted). Plaintiffs attempt to tie their claims to Washington D.C. claiming vague and unspecified "events or omissions . . . have occurred in this judicial district, including underlying decision-making and guidance . . . as disseminated to the agency's field offices." Am. Compl. ¶ 19. But in their more-specific allegations, Plaintiffs admit that most of the events giving rise to their challenges to the Wyoming permit approvals occurred in BLM field offices in Wyoming that are responsible for evaluating and approving the permits. *Id.* ¶ 103 & App. A.

"Where, as here, the only real connection the lawsuit has to the District of Columbia is that a federal agency headquartered [there] is charged with generally regulating and overseeing the administrative process, venue is not appropriate in the District of Columbia." *Al-Ahmed*, 564 F. Supp. 2d at 19 (internal alterations incorporated and internal quotation marks omitted); *see also Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 55 (D.D.C. 2012). Plaintiffs' allegations that BLM and DOI personnel in Washington D.C. generally regulate and provide oversight to the permitting process are insufficient to justify venue in this District, particularly when the Court is presented with a more appropriate venue with close ties to the more specific underlying facts. Accordingly, the Court need not afford Plaintiffs' choice of forum deference.

b.   *Wyoming Defendant-Intervenors' choice of forum weighs in favor of transfer*

The Wyoming Defendant-Intervenors also seek transfer of the Wyoming-based claims to the District of Wyoming to litigate local issues before a local court. A defendant's choice of forum deserves some weight when it presents "legitimate reasons for preferring to litigate the case in the transferee district." *Gulf Restoration Network*, 87 F. Supp. 3d at 313.

PAW has legitimate interests in its members' Wyoming permits and the future of oil and gas leasing and permitting on federal lands in Wyoming. PAW wants Plaintiffs' claims, which threaten to dramatically change the process for oil and gas lease permitting, adjudicated by a court close to and familiar with local land use concerns, and in proximity to the witnesses and evidence that will impact the outcome of the case. Accordingly, PAW's choice of forum should be afforded "some weight" because the alleged "harm from the federal agency's decision is felt most directly" in the District of Wyoming. *See id.*

AEC and PPRR both have oil and gas operations in Wyoming that are supported by many of the permits approved by BLM's Wyoming field offices that are subject to this lawsuit. *See, e.g.*, ECF No. 32-2 at ¶¶ 3, 5-6.  Naturally, their preferred forum is the District of Wyoming, because that forum is more convenient, where the actions at issue occurred, and where the property at issue is located. *See W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 99–100 (D.D.C. 2013); *see also Lewis*, 845 F. Supp. 2d at 235 ("Transfer is … proper when the material events that constitute the factual predicate for the plaintiff's claims occurred in the transferee district."(internal quotation marks omitted)).

c. *Nexus of claims to Wyoming favors transfer to the District of Wyoming*

In APA cases, "courts generally focus on where the decision-making process occurred to determine where the claims arose." *Nat'l Ass'n of Home Builders v. U.S. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) (denying transfer to Arizona where decisions occurred primarily in California and the District of Columbia); *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25 (D.D.C. 2002) (finding transfer appropriate where federal government decision-making occurred outside the District of Columbia). Permit-approval decisions are made by BLM field offices. *See* Am. Compl. ¶ 103 & App. A. Plaintiffs acknowledge that officials in the Buffalo and Casper, Wyoming field offices made the final determinations on the challenged Wyoming permits. *Id.* Accordingly, the Wyoming claims arise in Wyoming, and this factor weighs in favor of transfer to the District of Wyoming.

d. *The convenience of the parties, witnesses, and ease of access to evidence favor transfer*

Finally, the remaining factors—convenience of the parties and witnesses, and ease of access to sources of proof—favor transfer to Wyoming. For PAW and Defendant-Intervenor State of Wyoming, it is far more convenient to litigate the Wyoming claims in the jurisdiction where they are at home, rather than in Washington D.C. The federal government and many other Defendant-Intervenors, including AEC and PPRR, even if not at home in Wyoming, have operations and personnel in Wyoming. There is no prejudice or greater inconvenience for Plaintiffs, who are headquartered in the West, to travel to and litigate in Wyoming instead of Washington D.C. Each of the remaining factors weighs in favor of transferring the Wyoming claims.

## V.     CONCLUSION

For the foregoing reasons, the Wyoming Defendant-Intervenors move the Court to sever the Wyoming claims and transfer them to the District of Wyoming. A proposed order granting severance and transfer is attached to this motion as Exhibit 1.

DATED this 20th day of January 2023.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By:     /s/ Eric Waeckerlin
       Eric Waeckerlin, D.C. Bar No. 977228
       410 17th Street, Suite 2200
       Denver, CO 80202
       Tel.: 303.223.1100
       Fax: 303.223.1111
       ewaeckerlin@bhfs.com

       Affie Ellis, *pro hac vice*
       BROWNSTEIN HYATT FARBER SCHRECK, LLP
       1807 Capitol Avenue, Suite 203
       Cheyenne, WY 82001
       Tel.: 307.263.1327
       aellis@bhfs.com

       *Attorneys for Defendant-Intervenor Petroleum*
       *Association of Wyoming*

HOLLAND & HART LLP

By:     /s/ Andrew C. Emrich
       Thomas L. Sansonetti, D.C. Bar #949610
       Andrew C. Emrich, *pro hac vice*
       555 17th Street, Suite 3200
       Denver, CO 80202
       Tel: (303) 295-8000
       ACEmrich@hollandhart.com
       TLSansonetti@hollandhart.com

Bryson C. Smith, D.C. Bar #1025120
645 S. Cache St, Suite 100
P.O. Box 68
Jackson, WY
Tel: (307) 739-9741
BCSmith@hollandhart.com

*Attorneys for Defendant-Intervenor Peak Powder River Resources, LLC*


HOLLAND & HART LLP

By:    /s/ *Andrew C. Lillie*
       Andrew C. Lillie, D.C. Bar #CO0096
       555 17th Street, Suite 3200
       Denver, CO 80202
       Tel: (303) 295-8000
       aclillie@hollandhart.com

       Mark D. Gibson, D.C. Bar #CO0102
       1800 Broadway, Suite 300
       Boulder, CO 80302
       Tel: (303) 447-7199
       mdgibson@hollandhart.com

       *Attorneys for Defendant–Intervenor Anschutz Exploration Corporation*

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this 20th day of January, 2023, I caused a true and correct copy of the foregoing **DEFENDANT-INTERVENORS PETROLEUM ASSOCIATION OF WYOMING, ANSCHUTZ EXPLORATION CORPORATION, AND PEAK POWDER RIVER RESOURCES, LLC'S MOTION TO SEVER AND TRANSFER** to be filed with the Court electronically and served by the Court's CM/ECF system upon all counsel of record.


     */s/ Eric Waeckerlin*