IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,  )<br>                                                                                  )<br>                                                                                  )<br>         Plaintiffs,                                                     )<br>    v.                                                                       )<br>                                                                                  )<br>U.S. DEPARTMENT OF THE INTERIOR, *et al.*,  )<br>                                                                                  )<br>                                                                                  )<br>         Defendants.                                                 ) | Case No. 1:22-cv-1716-TSC |

**DEFENDANTS' RESPONSE TO DEFENDANT-INTERVENORS'
CONSOLIDATED MOTION TO DISMISS**

In accordance with the Court's December 28, 2022 Order, (ECF No. 81), Defendants United States Department of the Interior, United States Bureau of Land Management ("BLM"), Debra Haaland in her official capacity as Secretary of the United States Department of the Interior, and Tracy Stone-Manning in her official capacity as Director of the Bureau of Land Management (collectively, "Defendants") respond to Defendant-Intervenors'[1] Consolidated Motion to Dismiss, (ECF No. 84).

Defendants agree with Defendant-Intervenors that Plaintiffs have failed to allege facts at the pleading stage sufficient to establish Article III standing, and that their claims should be dismissed on that basis. To withstand Article III scrutiny, Plaintiffs must allege non-generalized harms—such as the impairment of their recreational and aesthetic interests from local air, noise,

---

[1] Although not all Defendant-Intervenors joined in the Consolidated Motion to Dismiss, for ease of reference, Defendants refer simply to the proponents of the Consolidated Motion to Dismiss as "Defendant-Intervenors."

and land pollution. Plaintiffs failed to do so in the scope and manner necessary to support their challenge to each of the over 4,000 separate agency actions challenged here. And Plaintiffs cannot fill this gap in their injury allegations by pointing to climate-based harm, because binding precedent in the D.C. Circuit makes clear that Plaintiffs cannot satisfy the injury and causation requirements.

Defendants decline to join Defendant-Intervenors' argument that Plaintiffs' claims are time-barred under the Mineral Leasing Act's statute of limitations. Def.-Intervenors' Mem. In Supp. of Consol. Mot. to Dismiss 26-38 (ECF No. 84-1). Defendants take no position on Defendant-Intervenors' argument invoking principles of administrative waiver. *Id*. at 38-41.

## **FACTUAL BACKGROUND**

The crux of Plaintiffs' allegations is that BLM failed to adequately consider the cumulative impacts of greenhouse gas emissions when it approved over 4,000 applications for permits to drill ("APDs")[2] oil and gas wells in the Permian and Powder River Basins in New Mexico and Wyoming, in violation of the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370m-11 ("NEPA"), the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701-1787 ("FLPMA"), and the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"). Am. Compl. ¶ 4, ECF No. 57. For their NEPA claims, Plaintiffs allege that BLM failed to take a hard look at cumulative greenhouse gas emissions, climate impacts, and environmental justice concerns. *Id*. ¶¶ 9-10, 105-06. For their FLPMA claims, Plaintiffs allege that BLM failed to

---

[2] An APD is the application package submitted by an operator to BLM necessary to authorize a resulting well. *See* Onshore Oil and Gas Operations, 72 Fed. Reg. 10,308-01 (Mar. 7, 2007). For ease of reference and because the approval of an APD is generally the last administrative step before construction of and production from a well may begin, Defendants use the terms "APD" and "oil and gas well" interchangeably.

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*　　　　　　　　　　　　　　　　　　2
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

consider and prevent unnecessary or undue degradation of public lands resulting from greenhouse gas emissions and climate impacts associated with each challenged APD. *Id.* ¶¶ 8, 180-90. And, for their ESA claims, Plaintiffs allege that BLM unlawfully failed to perform ESA Section 7 consultation with the U.S. Fish & Wildlife Service ("FWS") and/or the National Marine Fisheries Service ("NMFS") for each of the challenged APDs, and failed to reinitiate consultation for existing BLM resource management plans ("RMP"), to determine the RMPs' climate-related impacts on ESA-listed species. *Id.* ¶¶ 6-7, 157-79, 203-15.[3]

Plaintiffs allege that these supposed procedural violations, and the resulting approval of the APDs, will inflict both climate-based and non-climate-based harms on their members. Plaintiffs assert associational standing and, in support, identify three members living in Carlsbad or Eunice, New Mexico; seven members who are faith leaders in New Mexico; one member who recreates in the Powder River Basin in Wyoming; and five members who appear to have no ties whatsoever to the Permian or Powder River Basins. *Id.* ¶¶ 26, 27, 29, and 30.

Turning first to their climate-based harms, Plaintiffs allege that their members' quality of life will be harmed by global climate change, which will be exacerbated by the oil and gas produced from the approved APDs. These include alleged injuries to various health, religious, aesthetic, and recreational interests held in New Mexico, Wyoming, and around the world. *Id.* ¶ 26 (identifying member who is concerned with health risks associated with "the cumulative

---

[3] Once a species is listed under the ESA, Section 7 directs each federal agency (the "action agency") to ensure, in consultation with the FWS and/or the NMFS (the "consulting agency"), that "any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of" listed species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2). Re-initiation of a completed formal ESA Section 7 consultation is required in certain circumstances where discretionary federal agency involvement or control over the action has been retained or is authorized by law. 50 C.F.R. § 402.16.

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*　　　　　　　　　　　　　　　　　　3
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

effects of greenhouse gas emissions and climate change"); *id.* ¶ 27 (identifying member faith leaders who are "concerned about worsening climate change" and its effect on their religious practices and principles); *id.* ¶ 29 (identifying members whose ability to study and observe threatened and endangered species around the world is "threatened by warming temperatures," "threatened by sea level rise and degradation of their habitats as temperature[s] rise due to climate change," and "threatened by ocean acidification and warming temperatures"); *id.* ¶ 30 (identifying member whose enjoyment in searching for wildlife includes "various species threatened by catastrophic climate change").

Plaintiffs also allege that they will suffer non-climate-based harms resulting from the increased oil and gas development authorized by the APDs. With respect to New Mexico, Plaintiffs allege that localized pollutants, flaring, and fumes from the oil and gas development will degrade the health and quality of life of their members living in and around Eunice and Carlsbad. *Id.* ¶¶ 26-27. Plaintiffs further allege that oil and gas development will negatively impact their New Mexico members' religious practices "in areas in and around the challenged APDs." *Id.* ¶ 27. Turning to Wyoming, Plaintiffs rely on a single member to establish standing as to all challenged APDs in the Powder River Basin—that member alleges that his "recreational and aesthetic pursuits" in the Basin will be harmed by pollution, haze, smog, and various industrial elements associated with oil and gas development. *Id.* ¶ 30.

Based on the allegations above, Plaintiffs generically allege that their use and enjoyment of BLM lands that "are adjacent to the well sites for the oil and gas drilling permits . . . and lands that are around or within view of lands affected by the drilling permits" will be adversely affected as a result of BLM's approval of the 4,000-plus APDs. *Id.* ¶ 31. Notably, however, Plaintiffs decline to specify which parts of the 93,000-square-mile Permian Basin their members

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*　　　　　　　　　　　　　　　　　　　　　　　4
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

use and enjoy.  They instead limit themselves to identifying a single resident in Carlsbad, a single resident in Eunice, a pastor in the Carlsbad Mennonite Church, and seven faith leaders who visit unidentified communities within the Basin.  *Id.* ¶¶ 26-27.  Plaintiffs similarly fail to specify which parts of the 43,000-square-mile Powder River Basin their sole identified member uses and enjoys.  *Id.* ¶ 30.  Plaintiffs also fail to define the geographic area affected by any one APD—either with respect to a particular APD, or in general terms.  And Plaintiffs decline to correlate any of their alleged injuries or injured members to any of the 4000-plus APDs they list in Appendix A to the amended complaint, despite those APDs being dispersed throughout four BLM planning areas in two non-contiguous states.

## ARGUMENT

Article III of the U.S. Constitution limits federal judicial authority to the adjudication of "Cases" and "Controversies."  U.S. CONST. art. III, § 2.  One "essential and unchanging part of the case-or-controversy requirement" is standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

To establish standing at the pleading stage, a complaint must allege facts that plausibly support the three familiar elements of standing: (1) injury, (2) causation, and (3) redressability.  *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015) (citing *Lujan*, 504 U.S. at 560-61, and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in plaintiff's favor, "threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alterations omitted) (quoting *Iqbal*, 556 U.S. at 678).  That is, the plaintiff must adequately allege, in accordance with its burden of proof, sufficient facts to plausibly show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*                                                                                          5
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

(b) actual or imminent, not conjectural or hypothetical"; that such injury is "(2) . . . fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61).

For an association to have standing based on its members' interests, it must demonstrate not only that the suit is germane to its purpose and that individual participation is not required, but also that "its members would otherwise have standing to sue in their own right." *Id*. (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).[4]

When a plaintiff alleges a procedural injury, certain elements of the standing inquiry are relaxed, but others hold firm. For example, "a plaintiff must always identify an 'injury to a concrete, particularized interest.'" *WildEarth Guardians v. Salazar (WEG I)*, 880 F. Supp. 2d 77, 83 (D.D.C. 2012) (quoting *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005)), *aff'd*, 738 F.3d 298 (D.C. Cir. 2013); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (recognizing that Congress cannot remove the "hard floor" of the Article III injury requirement). Alleging a procedural injury—like an alleged failure on the part of a government agency to conduct a required environmental analysis—gets a plaintiff only so far. The allegations cannot rely simply on a general interest in the procedural violation "common to all members of the public." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc) (citation omitted). The alleged procedural injury must still "be tethered to some concrete interest adversely affected by the procedural deprivation." *WildEarth Guardians v. Jewell (WEG II)*, 738 F.3d 298, 305 (D.C. Cir. 2013).

---

[4] Defendants contend that Plaintiffs have failed to demonstrate only the third prong of associational standing.

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*  
No. 1:22-cv-1716-TSC  
Defs.' Resp. to Consol. M. to Dismiss

6

Causation is similarly steadfast. *WEG I*, 880 F. Supp. 2d at 83. Even when alleging a failure to perform a required procedure under NEPA or the ESA, a plaintiff "must show not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will *cause* the essential injury to the plaintiff's own interest." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009) (emphasis added) (citation omitted); *see also Fla. Audubon Soc'y*, 94 F.3d at 665 (same); *Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that *is affected by* the deprivation—a procedural right in vacuo—is insufficient to create Article III standing." (emphasis added)).

Only the requirements about the immediacy of the injury and its redressability are more forgiving in procedural rights cases. *WEG II*, 738 F.3d at 305. In particular, a plaintiff need not allege that a court order directing the agency to remedy the alleged procedural defect would necessarily change the government's substantive decision and the ultimate harm inflicted on the plaintiff. *Ctr. for Law & Educ.*, 396 F.3d at 1160. A plaintiff, however, must still plausibly allege that if the agency followed the correct procedures, it could provide redress for the plaintiff's alleged injuries. *Narragansett Indian Tribal Hist. Pres. Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020) (dismissing for lack of standing where redress of the plaintiff's injuries was impossible even if the agency followed correct procedures).

I.  **Plaintiffs' Climate-Based Harms Do Not Establish Standing.**

Plaintiffs' climate-based harms fail to satisfy the injury and causation prongs necessary to establish standing. Beginning with injury, Plaintiffs generally allege that their members are concerned about "the cumulative effects of greenhouse gas emissions and climate change for all in this world," Am. Compl. ¶ 26, and that they worry about their future in light of increased

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*   7
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

"storms, droughts, flooding, and food insecurity due to climate change . . . ." *Id.* ¶ 27.  Specific to their ESA claims, they allege that five of their members visit, observe, photograph, or otherwise enjoy threatened and endangered species, including squirrels in southeastern Arizona, butterflies in southern Florida and California, songbirds in Hawaii, and corals in the world's oceans.  *Id.* ¶ 28-29.  And they allege that one of their members enjoys searching for various climate-imperiled species in the Powder River Basin.  *Id.* ¶ 30.  As to all of these interests and injuries, Plaintiffs maintain that their climate-related harms will be worsened or exacerbated by the greenhouse gases emitted from the oil and gas wells authorized by the challenged APDs.  *Id.* ¶¶ 26-30.

Defendants do not doubt the sincerity of these concerns and indeed they must be accepted as true at this stage.  *See, e.g.*, *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 539 F. Supp. 2d 331, 337-38 (D.D.C. 2008).  But Plaintiffs' allegations fall short as a matter of law because the D.C. Circuit has held that climate-based injuries to a plaintiff's enjoyment of species and their ecosystems, such as those alleged here, are insufficient to establish standing.  *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009).  In addressing a challenge to an offshore oil and gas leasing plan, the court in *Center for Biological Diversity* concluded that environmental groups could not satisfy the injury or causation elements of standing based on a theory that the agency's actions would contribute to climate change, which would in turn adversely affect the environmental groups' enjoyment of animal species and their ecosystems.  *Id*. at 475-76.[5]

---

[5] The *Center for Biological Diversity* court did ultimately find standing as to the plaintiffs' procedural claims, but not based on the plaintiffs' climate-based injuries.  The court instead determined that plaintiffs had satisfied the injury, causation, and redressability elements of standing by showing that "offshore drilling" could cause a substantial increase in the risk to their

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*  
No. 1:22-cv-1716-TSC  
Defs.' Resp. to Consol. M. to Dismiss

8

As in *Center for Biological Diversity*, Plaintiffs have "failed to demonstrate a causal link between the government action by Interior and Petitioners' particularized injury." *Id.* at 478. Plaintiffs have not established that their alleged climate-based injuries are fairly traceable to the challenged APDs. To prove causation, a plaintiff challenging an agency's analysis and consultation under NEPA and the ESA must show a "substantial probability . . . that the substantive agency action that disregarded a procedural requirement created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff . . . ." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d at 669 (citation omitted). Plaintiffs cannot carry that burden here because, applying *Center for Biological Diversity*, they have not pleaded that the greenhouse gas emissions allegedly resulting from the challenged APDs would yield a demonstrable increase in climate-based risk to any of their alleged interests. 563 F.3d at 478.

A similar situation arose in *WEG I*, where a coalition of environmental groups challenged on NEPA and ESA grounds BLM's decision to lease two tracts of public land in the Powder River Basin for coal mining operations. 880 F. Supp. 2d at 83. The court first recognized that, while "the normal standards of redressability and immediacy are relaxed" in the context of procedural rights cases, "the requirements of injury in fact and causation are not." *Id.* It then held that the plaintiffs had not shown that coal mining in the Basin and its associated greenhouse

---

enjoyment of the animals affected by that drilling activity. 563 F.3d at 479. Consistent with the D.C. Circuit case law discussed above, the *Center for Biological Diversity* court did not relax the injury or causation requirements for plaintiffs asserting procedural claims. In discussing *Center for Biological Diversity*, the D.C. Circuit in *WEG II* again endorsed this position and reiterated that "a separate injury in fact not caused by climate change," 738 F.3d at 308, that satisfied the traditional injury and causation requirements for standing, would be necessary for plaintiffs' claims to survive Article III scrutiny.

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*　　　　　　　　　　　　　　　　　　　　9
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

gas ("GHG") emissions would yield a demonstrable increase in risk to their interests in the areas adjacent to the leased tracts. *Id.* at 85. The court explained that there was a "disconnect between Plaintiffs' recreational, aesthetic, and economic interests, which [were] uniformly local, and the diffuse and unpredictable effect of GHG emissions." *Id.* at 84. And it noted that plaintiffs had failed to establish a nexus between anticipated GHG emissions from the challenged coal leases and the particular climate-based injuries plaintiffs had alleged within specific geographic areas of concern. *See id.* at 85 (explaining that plaintiffs' assertion that "greenhouse gases emitted anywhere can exacerbate climate change everywhere" was an inadequate substitute for establishing the requisite nexus (citation omitted)). The court, in sum, concluded that the causal chain between the challenged coal leases and the plaintiffs' alleged climate-based harm was too attenuated to establish standing. *Id.* at 86.[6]

As in *WEG I*, Plaintiffs here have not alleged facts sufficient to demonstrate that greenhouse gas emissions from the challenged APDs—as opposed to the large volume of greenhouse gases already accumulated in the atmosphere in combination with other existing or

---

[6] While the D.C. Circuit ultimately reversed certain aspects of the district court's decision in *WEG I*, it did not disturb that court's holdings concerning the inadequacy of climate-based harm as a basis for standing. *See WEG II*, 738 F.3d at 307. The D.C. Circuit in *WEG II* instead rejected the district court's view that a plaintiff must establish *climate*-based standing before scrutinizing an agency's climate analysis in a NEPA document. It concluded instead that a plaintiff who establishes standing to challenge a NEPA document on any basis is entitled to judicial review of all alleged inadequacies in that document, including any inadequacies in the analysis of climate impacts. *Id*. at 306-08. Having made that point, however, the D.C. Circuit reaffirmed its earlier pronouncement in *Center for Biological Diversity*, that neither the injury nor causation requirements of standing are satisfied when a plaintiff alleges that "expanded drilling would contribute to global climate change which in turn would threaten [plaintiffs'] enjoyment of the area and indigenous animal species." *Id*. at 307. Following that affirmation, it stated: "We think (and the Appellants do not dispute) that the Appellants likewise cannot establish standing based on the effects of global climate change." *Id*.

Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.                                                                 10
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

future sources of greenhouse gas emissions—are of such a volume and character that they will have a demonstrable effect on Plaintiffs' climate-based harms.

For all of these reasons, Plaintiffs' alleged climate-based injuries cannot satisfy the injury in fact and causation prongs of Article III standing under D.C. Circuit precedent. And this is dispositive of Plaintiffs' ESA Section 7 claims, Am. Compl. ¶¶ 6-7, 157-79, 203-15, because Plaintiffs' standing allegations for those claims are based entirely on alleged climate-based injuries. *See* Am. Compl. ¶¶ 29-30. "Because 'standing is not dispensed in gross' but instead may differ claim by claim," courts must "address seriatim" plaintiffs' standing on each of their claims for relief. *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (quoting *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008))); *see also Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1248 (10th Cir. 2021) ("[O]ne injury does not entitle a litigant to right other wrongs that did not injure it." (alteration in original) (citations omitted)). Here, Plaintiffs raise distinct ESA claims and seek ESA-specific relief, including an injunction barring issuance of any APDs until BLM has complied with ESA Section 7(a)(2) as allegedly required. Am. Compl. Relief Requested ¶ E. Where, as here, Plaintiffs fail to plausibly allege causation and redressability for ESA Section 7 claims based entirely on climate-based injuries, those claims must be dismissed for lack of standing in accordance with *WEG I*, 880 F. Supp. 2d at 85.[7]

---

[7] Plaintiffs must not only establish causation for purposes of standing to bring their ESA claims, but also must do so consistent with the ESA Section 7 regulations and case law in order to prevail on the merits of those claims. *See, e.g.*, *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 930 (9th Cir. 2008) ("Agency action can only 'jeopardize' a species' existence [within the meaning of ESA Section 7(a)(2)] if that agency action *causes* some deterioration in the species' pre-action condition." (emphasis added)). Even assuming this Court

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*                                                                11
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

The inadequacy of Plaintiffs' climate-based allegations also requires dismissal of the NEPA and FLPMA claims for each of the challenged APDs, unless Plaintiffs can demonstrate that they have standing by some other means. Unlike with their ESA claims, Plaintiffs have alleged some localized, non-climate-based environmental harms relating to their NEPA and FLPMA claims. *See* Am. Compl. ¶¶ 26-27, 30-33. Whether those allegations satisfy Article III for each of the challenged APDs is discussed in Part II below. Where those allegations of localized harms fall short, however, Plaintiffs may not fill the gap by relying on alleged climate-based injuries.

## II.     Plaintiffs' Non-Climate-Based Harms Also Do Not Establish Standing.

Unable to satisfy standing with allegations of climate-based harms, Plaintiffs must rely instead on their allegations that Defendants' approval of the challenged APDs will cause localized environmental injury—like increases in local air, water, and land pollution—to support their NEPA and FLPMA claims. *E.g.*, *WEG II*, 738 F.3d at 306. But, here again, Plaintiffs' allegations fail on the injury and causation fronts. While Plaintiffs could, in theory, put forth allegations in the number and with the requisite detail necessary to support standing to challenge over 4,000 agency actions based on localized environmental harm, they have not yet done so.

"[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Plaintiffs must present allegations that could

---

found that Plaintiffs have sufficiently alleged causation to establish standing for their ESA claims for Rule 12(b)(1) purposes, this Court should not pre-judge the causation issue on the merits of Plaintiffs' ESA claims until after complete briefing on this issue at summary judgment.

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*   12
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

demonstrate "concrete and particularized injury which has occurred or is imminent *due to geographic proximity to the action challenged*." *WildEarth Guardians v. Zinke* (*Zinke*), 368 F. Supp. 3d 41, 61 (D.D.C. 2019) (quoting *City of Olmsted Falls v. FAA*, 292 F.3d 261, 267 (D.C. Cir. 2002)).  Generalized allegations that plaintiffs use or intend to use areas managed by the relevant government agency will not suffice.  *See Summers v. Earth Island Inst.*, 555 U.S. at 495-96 (rejecting argument that intention to visit unidentified national forests was enough to confer standing to challenge any government action that could affect a portion of those forests).

And, as discussed above, "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  At the pleading stage there must be at least *some* plausible allegations establishing the scope of the area affected by each challenged activity and plaintiff's use of that area.  *See id*. (affirming that "a plaintiff who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject" (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982))).

Plaintiffs must therefore allege facts establishing the "affected area" for each "challenged activity"—in this case, the area affected by each challenged APD.  Plaintiffs must then also present facts that their members use each of those affected areas, and that their members' aesthetic and recreational interests in each area will be lessened by the challenged activity.  Of course, Plaintiffs may define the "affected area" for each APD in any number of overlapping ways, such as by visual site lines, relevant air sheds, or anticipated range of resulting noise pollution, so long as Plaintiffs' allegations plausibly satisfy Article III's standing requirements.  But Plaintiffs cannot do what they have done here: merely allege that their members live, work, and recreate somewhere within the Permian Basin or Powder River Basin and that local pollution

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*　　　　　　　　　　　　　　　　　　　　13
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

from general "oil and gas development" on BLM lands somewhere within those basins will inflict environmental harm. *E.g.*, Am. Compl. ¶ 26 (alleging that "oil and gas development . . . in the region" causes local pollution in the form of "flares" and "noxious fumes" without identifying the associated APDs in the region and their affected area); *id*. ¶ 27 (alleging interference with religious practices "in areas in and around the challenged APDs" without identifying the associated APDs and their affected area); *id.* ¶ 30 (alleging that "development" generally "leads to air pollution, both directly from engines, flaring, and other sources, but also through the creation of haze and smog" without identifying the APDs associated with that development and their affected area).

One way for Plaintiffs to satisfy their burden could be for Plaintiffs' members located in Eunice, Carlsbad, and the Powder River Basin to allege that their aesthetic and recreational interests are harmed by local pollution from *particular* APDs. But Plaintiffs make no effort to identify those APDs, their affected area, or that the members' activities are within those affected areas. There are no allegations that local pollution from any particular APDs is seen, heard, inhaled, or felt within a certain defined geographic area and that Plaintiffs' members use and enjoy that affected area.

Another way to satisfy Plaintiffs' burden could be to allege that localized pollution from *any* APD anywhere in either basin affects members in, for example, Eunice, New Mexico. But then Plaintiffs would have to allege facts to support that theory, including by alleging that the geographic reach of any and every identified APD is such that it causes the concrete and particularized injury Plaintiffs allege to have suffered. What Plaintiffs cannot do is generically allege localized impacts at undisclosed locations within both basins and contend on that basis that they have satisfied standing as to all 4,000-plus challenged agency actions. That approach

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*   14
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

does not satisfy their burden as to any of the particular APDs they challenge. *See, e.g.*, *Zinke*, 368 F. Supp. 3d at 60 ("Plaintiffs, as the parties invoking this Court's jurisdiction, bear the burden of establishing all three elements of standing.").[8]

Plaintiffs' failure to adequately allege environmental injury from the challenged APDs necessarily forecloses their ability to establish causation as well. Without allegations that a challenged activity affects an area and lessens Plaintiffs' members' use and enjoyment of that area, Plaintiffs cannot demonstrate that alleged injuries to their members' recreational and aesthetic interests are "fairly traceable to the challenged action of the defendant." *WEG II*, 738 F.3d at 305 (quoting *Lujan*, 504 U.S. at 560-61).

\*   \*   \*

Plaintiffs, in sum, cannot establish standing based on their allegations of climate-based harms. They must instead allege a localized environmental harm—together with facts showing causation and redressability—for each of the over 4,000 challenged APDs. And Plaintiffs' allegations at present are not pled with the requisite particularity necessary to sustain a challenge to any one APD at the pleading stage, let alone over 4,000. For all of these reasons, Plaintiffs' claims should be dismissed for lack of standing.

---

[8] For the same reason, allowing Plaintiffs to obtain review of their claims as to all 4,000-plus challenged APDs based on their current standing allegations would run afoul of the bar on programmatic challenges under the APA. A plaintiff invoking the APA's private right of action must identify each agency action or inaction it purports to challenge, and it must satisfy standing and all other jurisdictional prerequisites for each individual action. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("[T]he person claiming a right to sue must identify some 'agency action' [or failure to act] that affects him in the specified fashion; it is judicial review 'thereof' to which he is entitled." (quoting 5 U.S.C. § 702)). Failure to satisfy these requirements for any APD requires dismissal of Plaintiffs' claims as to that APD because a plaintiff "cannot seek *wholesale* improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *See id.* at 891.

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*                                        15
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

**III.     The Mineral Leasing Act's Statute of Limitations Does Not Bar Plaintiffs' Claim**

The threshold Article III standing analysis discussed above dictates that Plaintiffs' claims must be dismissed. Therefore, the Court need not reach the additional arguments presented by Defendant-Intervenors. *See, e.g.*, *Steward v. Kendall*, 578 F. Supp. 3d 18, 25 & n.4 (concluding that because plaintiff lacked standing, the court need not consider whether plaintiff's claims were untimely). For the sake of clarity, however, Defendants note that they do not join in Defendant-Intervenors' argument that Plaintiffs' claims are barred by the Mineral Leasing Act's ("MLA") ninety-day statute of limitations.

Congress amended the MLA to add a ninety-day statute of limitations on September 2, 1960. Mineral Leasing Act Revision of 1960, Pub. L. No. 86-705, § 5, 74 Stat. 781, 790. The statute directs that actions "contesting a decision of the Secretary involving any oil and gas lease" must be brought within ninety days of the Secretary's final decision. 30 U.S.C. § 226-2. In the nearly sixty-three years since its enactment, the Department of the Interior, to the best of its knowledge, has never interpreted § 226-2 to apply to anything other than agency decisions made at the leasing stage. Defendant-Intervenors have likewise not identified a single instance in which a court applied § 226-2 beyond these established confines to APDs.

## CONCLUSION

For the reasons stated herein, Plaintiffs have failed to establish Article III standing and their claims must be dismissed. Defendants do not join Defendant-Intervenors' argument concerning the application of the MLA's ninety-day statute of limitations and Defendants take no position on the remaining administrative waiver argument raised by Defendant-Intervenors in their Consolidated Motion to Dismiss.

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*                                                                     16
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss

Respectfully submitted this 17th day of March 2023.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Michael K. Robertson*
Michael K. Robertson (DC Bar No. 1017183)
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice

Clifford E. Stevens, Jr. (DC Bar No. 463906)
Senior Trial Attorney
Wildlife and Marine Resources Section
Environment and Natural Resources Division
United States Department of Justice

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2023, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Michael K. Robertson*
Michael K. Robertson (DC Bar No. 1017183)
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice

*Ctr. for Bio. Diversity, et al. v. Dep't of Interior, et al.*   17
No. 1:22-cv-1716-TSC
Defs.' Resp. to Consol. M. to Dismiss