IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Center for Biological Diversity, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:22-cv-1716 (TSC) |
| U.S. Department of the Interior, et al., | |
| Defendants. | |

**DEFENDANT-INTERVENORS PETROLEUM ASSOCIATION OF WYOMING, ANSCHUTZ EXPLORATION CORPORATION, AND PEAK POWDER RIVER RESOURCES, LLC'S REPLY IN SUPPORT OF MOTION TO SEVER AND TRANSFER**

Defendant-Intervenors Petroleum Association of Wyoming ("PAW"), Anschutz Exploration Corporation ("AEC"), and Peak Powder River Resources, LLC ("PPRR") (together, "Wyoming Defendant-Intervenors") submit this Reply in support of their motion asking the Court to sever the claims challenging the Bureau of Land Management's ("BLM") approval of the Wyoming applications for permits to drill ("permits" or "APDs") and transfer those claims to the U.S. District Court for the District of Wyoming ("District of Wyoming").

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 3

    A. Plaintiffs Ignore the Importance of Local Character of the More Than 4,000 Permitting Decisions .................................................................................. 3

        1. Plaintiffs' characterization of a "federal oil & gas program" obscures the inherently local nature of their more than 4,000 permit challenges ............................................................................................. 4

        2. Federal agency decisions that implement federal policy implicate local interests ............................................................................................ 6

        3. NEPA, FLPMA, and the ESA contemplate local control and decisionmaking ...................................................................................... 9

    B. Efficient Dispute Resolution Favors Severance .................................................. 11

        1. Separate consolidated administrative records for Wyoming and New Mexico would enhance efficient resolution of Plaintiffs' claims ................................................................................................. 11

        2. The fact-dependent nature of Plaintiffs' claims reduces the risk of inconsistent or irreconcilable decisions .................................................. 13

        3. Contrary to Plaintiffs' suggestion, severing the Wyoming and New Mexico claims into two cases does not create inefficiencies ................... 14

    C. Location of Witnesses and Evidence May Be Relevant in APA Cases ............... 15

    D. Plaintiffs Overstate the Burden on Defendant-Intervenors to Show That Transfer of the Wyoming Claims Is Appropriate ................................................ 16

III. CONCLUSION ................................................................................................................. 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Edgewood Mgmt. Corp.*,
   321 F.R.D. 460 (D.D.C. 2017) ................................................................................................6

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993) ..............................................................................................15

*Am. Oversight v. U.S. Dep't of Veterans Affs.*,
   326 F.R.D. 23 (D.D.C. 2018) ................................................................................................11

*Augustus v. McHugh*,
   No. 02-cv-2545, 2010 WL 11706984 (D.D.C. Sept. 29, 2010) .............................................16

*Bourdon v. U.S. Dep't of Homeland Sec.*,
   235 F. Supp. 3d 298 (D.D.C. 2017) .......................................................................................18

*C.G.B. v. Wolf*,
   464 F. Supp. 3d 174 (D.D.C. 2020) ....................................................................................5, 6

*Crews v. Carson*,
   No. 19-cv-3538, 2020 WL 12948520 (D.D.C. Oct. 16, 2020) ................................................5

*Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*,
   75 F. Supp. 3d 353 (D.D.C. 2014) ........................................................................................16

*Diné Citizens Against Ruining Our Env't v. Bernhardt*,
   923 F.3d 831 (10th Cir. 2019) ................................................................................................4

*Does 1-144 v. Chiquita Brands Int'l, Inc.*,
   285 F. Supp. 3d 228 (D.D.C. 2018) .......................................................................................14

*Esch v. Yeutter*,
   876 F.2d 976 (D.C. Cir. 1989) ..............................................................................................15

*Forest Cnty. Potawatomi Cmty. v. United States*,
   169 F. Supp. 3d 114 (D.D.C. 2016) .........................................................................................7

*Friends of the Earth v. Hintz*,
   800 F.2d 822 (9th Cir. 1986) ................................................................................................15

## TABLE OF AUTHORITIES
(continued)

Page

*Greater Yellowstone Coal. v. Bosworth*,
   180 F. Supp. 2d 124 (D.D.C. 2001) ............................................................................... 17

*In re Papst Licensing GmbH & Co. KG Litig.*,
   967 F. Supp. 2d 63 (D.D.C. 2013) .................................................................................. 6

*Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*,
   440 U.S. 391 (1979) ....................................................................................................... 10

*Lujan v. Nat'l Wildlife Fed.*,
   497 U.S. 871 (1990) ....................................................................................................... 10

*Martinez v. Dep't of Just.*,
   324 F.R.D. 33 (D.D.C. 2018) ........................................................................................ 11

*Niagara Pres., Coal., Inc. v. Fed. Energy Regul. Comm'n*,
   956 F. Supp. 2d 99 (D.D.C. 2013) .................................................................................. 19

*Pac. Mar. Ass'n v. N.L.R.B.*,
   905 F. Supp. 2d 55 (D.D.C. 2012) ................................................................................. 17

\*Pasem v. U.S. Citizenship & Immigr. Servs.*,
   No. 20-cv-344, 2020 WL 2514749 (D.D.C. May 15, 2020) .......................................... 6, 7, 16

*Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*,
   893 F. Supp. 2d 49 (D.D.C. 2012) .................................................................................. 9

*Roh v. Schultz*,
   No. 21-cv-2560, 2022 WL 2132559 (D.D.C. June 14, 2022) ........................................ 17

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*,
   No. 18-cv-760, 2019 WL 2077120 (D.D.C. May 10, 2019) .......................................... 7, 14

*Sierra Club v. Flowers*,
   276 F. Supp. 2d 62 (D.D.C. 2003) ................................................................................. 7, 16, 19

*The Wilderness Soc. v. Babbitt*,
   104 F. Supp. 2d 10 (D.D.C. 2000) ................................................................................. 8

\*Trout Unlimited v. U.S. Dep't of Agric.*,
   944 F. Supp. 13 (D.D.C. 1996) ..................................................................................... 17, 18

# TABLE OF AUTHORITIES
(continued)

Page

*United States v. H & R Block, Inc.*,
  789 F. Supp. 2d 74 (D.D.C. 2011) ...................................................................................... 18

*US Dominion, Inc. v. Powell*,
  554 F. Supp. 3d 42 (D.D.C. 2021) ...................................................................................... 16

*\*W. Watersheds Project v. Vilsack*,
  No. 21-cv-3056 (D.D.C. Sept. 20, 2022), ECF No. 28 (Mem. Op. and
  Order) ................................................................................................................................. 10

*Wultz v. Islamic Republic of Iran*,
  762 F. Supp. 2d 18 (D.D.C. 2011) ................................................................................ 13, 14

*Wyandotte Nation v. Salazar*,
  825 F. Supp. 2d 261 (D.D.C. 2011) ...................................................................................... 8

**Statutes**

5 U.S.C. § 703 ............................................................................................................................ 10

16 U.S.C. § 1531(c) ..................................................................................................................... 9

16 U.S.C. § 1540(c) ................................................................................................................... 10

42 U.S.C. § 4331 .......................................................................................................................... 9

42 U.S.C. § 7607-(b)(1) ............................................................................................................. 10

43 U.S.C. § 1701(a)(2) ................................................................................................................. 9

Administrative Procedure Act,
  5 U.S.C. §§ 551-559 .............................................................................................. 10, 15, 16

Endangered Species Act,
  16 U.S.C. §§ 1531–44 ................................................................................................ 1, 9, 10

Federal Land Policy and Management Act,
  43 U.S.C. §§ 1701–1787 ............................................................................................ 1, 9, 10

Freedom of Information Act,
  5 U.S.C. § 552 .................................................................................................................... 10

National Environmental Policy Act,
  42 U.S.C. §§ 4321–4370m-11 ........................................................................ 1, 2, 4, 9, 10, 15

## TABLE OF AUTHORITIES
(continued)

Page

**Regulations**

40 C.F.R. § 1508.1 ................................................................................................................2

43 C.F.R. § 1610.5-2 .............................................................................................................2

43 C.F.R. § 3000.5 ................................................................................................................2

43 C.F.R. § 3162.3-1 .........................................................................................................2, 11

**Other Authorities**

BLM General Management Manuals,
    MS-1201.08(D & (E)),
https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual1201.pdf
    ................................................................................................................................5

BLM Gen. Mgmt. Manuals,
    MS-1201.08(F),
https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual1201.pdf
    ............................................................................................................................5, 8

BLM General Management Handbook,
    H-1624-1, https://www.blm.gov/sites/blm.gov/files/H-1624-1%20rel%201-1791.pdf
................................................................................................................................5

Freedom of Information Act Guidelines, Memorandum for Heads of Executive
    Departments and Agencies, Office of the Attorney General (March 15, 2022),
    https://www.justice.gov/ag/page/file/1483516/download ..................................................11

USCIS Policy Manual,
    https://www.uscis.gov/book/export/html/68600...................................................... 11

I.  **INTRODUCTION**

Plaintiffs fuse their jumbled challenges to more than 4,000 unique applications for permits to drill in the Powder River and Permian Basins into a single lawsuit under a novel theory that four separate field offices in two separate states each failed to act in accordance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370m-11, the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701–1787, when issuing more than 4,000 permits.

Plaintiffs suggest that thousands of individual permit approvals in Wyoming and New Mexico improperly relied on some kind of unwarranted and overarching federal policy, ignoring, for example, regional variations in field offices, relevant decision-making documents, and on-the-ground conditions. Plaintiffs' approach is an inefficient and inappropriate attempt to litigate the sufficiency of the federal government's environmental analysis of more than 4,000 individual oil and gas development decisions.

Oil and gas development on federal lands follows the same general trajectory nationwide: BLM develops a regional resource management plan ("RMP") under FLPMA, undertakes scoping and lease sales, and finally evaluates applications for permits to drill. Am. Compl. ¶¶ 88–101 (ECF No. 57); Pls. Br. at 6–7 (ECF No. 94). At each stage, BLM evaluates the environmental impacts of its decisions. And BLM's decisions respond to local conditions with input from those local stakeholders impacted by the decisions. This is particularly true when BLM issues permits to drill, which require an operator to submit to the relevant field office a drilling plan including pertinent geologic data, expected hazards, proposed mitigation measures, and a surface-use plan, including road and drill-pad locations, methods for containment and

disposal of waste, and a land-reclamation plan. *See* 43 C.F.R. § 3162.3-1; Am. Compl. ¶ 103 & App'x A. These permitting decisions may rely on overarching environmental analyses under NEPA at the RMP and leasing stages (known as "tiering"), but they are fundamentally and irrevocably local. 40 C.F.R. § 1508.1(ff).

Plaintiffs could have challenged the federal government's failure to adequately consider climate impacts in the RMPs or leasing decisions, the documents which determine the federal government's approach to oil and gas development on federal lands. *See* 43 C.F.R. § 1610.5-2 (protest to RMP must be filed within 30 days); 43 C.F.R. § 3000.5 (90-day period to contest a decision of the Secretary of the Interior's involving any oil or gas lease or offer). They failed to do so.[1] Plaintiffs now attempt to belatedly challenge BLM's carefully considered policy decisions via a collateral attack on more than 4,000 permits, which Plaintiffs generically contend all fail for the same reasons. Nothing in Plaintiffs' response brief ("Response") to Wyoming Defendant-Intervenor's motion alters this fatal flaw.

As they did in the Amended Complaint, Plaintiffs still broadly and generally argue that all the permits are deficient, while failing to cite any alleged individual shortcoming of even one specific permit in their Amended Complaint. *See generally* Am. Compl. And, although Plaintiffs frame this case as challenging the federal oil and gas program writ large, they challenge only 74% of permits issued from January of 2021 to September 2022 (when the Amended Complaint was filed), and only those permits in Wyoming and New Mexico, excluding permits issued in Alaska, California, Colorado, the Eastern States, Montana, Nevada, and Utah. Am. Compl. ¶ 104

---

[1] Plaintiffs also failed to bring timely challenges to the individual permit decisions. *See* ECF No. 85.

& App'x A. This omission undermines Plaintiffs' contention that this is a national challenge to the oil and gas permitting scheme and highlights the unwieldy, inefficient nature of this haphazard lawsuit.

The bottom line is that nothing Plaintiffs argue in their Response changes the fact that they chose to challenge more than 4,000 individual permitting decisions—each of which requires fact-intensive analysis, and each of which stands or falls on its own individual record—in a venue untethered to where the decisions were made. The predominance of state-specific, regional, and site-specific considerations means that the Wyoming and New Mexico claims do not have substantial evidentiary overlap. The predominance of local concern is a sufficient reason to sever the Wyoming claims and transfer them to the District of Wyoming.

If the Court denies the pending motion to dismiss (ECF No. 84), Wyoming Defendant-Intervenors ask the Court to sever the Wyoming claims and transfer them to the District of Wyoming, the better venue for adjudicating them.[2]

**II.     ARGUMENT**

    **A.     Plaintiffs Ignore the Importance of Local Character of the More Than 4,000 Permitting Decisions**

Plaintiffs in their Response continue their flawed attempt to nationalize their challenges to the more than 4,000 permits by noting common issues of fact and law. When properly considered, however, the inherent factual differences between the Wyoming and New Mexico claims justify severance and transfer of the Wyoming claims to the District of Wyoming.

---

[2] AEC and PPRR do not concede that this Court is a proper venue for Plaintiffs' challenges to their drilling permits. *See* AEC Addendum at 4-5, ECF No. 84-6; PPRR Addendum at 4-5, ECF No. 84-5; AEC & PPRR Reply Addendum (filed contemporaneously herewith).

1. Plaintiffs' characterization of a "federal oil & gas program" obscures the inherently local nature of their more than 4,000 permit challenges

Plaintiffs insist that the "federal oil and gas" program is the "common thread" that unites their claims, while ignoring that individual permit decisions are administered at the local level. Pls. Br. at 15. While Plaintiffs frame their claims in the abstract, they must ground their challenges in the actual, on-the-ground permitting decisions made by the individual field offices. *See* Am. Compl. ¶ 103; *see Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 844 (10th Cir. 2019) (recognizing the sufficiency of BLM's NEPA analysis must be evaluated on the complete record for each permitting decision).[3] As the federal defendants here recognize, the 4,000 distinct BLM permitting decisions arising from different field offices in Wyoming and New Mexico weigh against finding that Plaintiffs' claims arise out of the same transaction or occurrence or concern common questions of law or fact. Fed. Defs. Br. at 2–3 (ECF No. 92) ("Defendant-Intervenors correctly point out that BLM's Wyoming and New Mexico field offices have different decisionmakers and 'each [APD] approval is a factually distinct, separate agency action.'").

Wyoming and New Mexico operate under different BLM state and field offices, manage diverse RMPs, and consider dissimilar, on-the-ground considerations. BLM's guidance documents delegate planning and implementation of national policy to the state and field offices. While the Washington office provides "national level decisionmaking, policy and program

---

[3] Wyoming Defendant-Intervenors recognize this case did not concern whether the claims were properly joined, and simply cite the case for the proposition that each permit approval is a distinct action. *Diné Citizens*, 923 F.3d at 844. Wyoming Defendant-Intervenors rely on other cases to argue that there is no logical relationship between the Wyoming and New Mexico permitting decisions.

-4-

direction to the rest of the BLM" (as it must), state offices (the top-line administrative units for organizing field offices) set statewide policies, interpret national policy, facilitate and implement national policy, and provide "ultimate decisionmaking authority." *See* BLM General Management Manuals, MS-1201.08(D) & (E)(a). (*See* Brief's Table of Authorities for Internet address.) "The State Director determines where and under what conditions oil and gas or geothermal exploration, development, and utilization activities will be permitted," in the regional RMP in accordance with BLM guidance. BLM General Management Handbook H-1624-1 at I-2. (*See* Brief's Table of Authorities for Internet address.) BLM field offices are charged with preparing and making decisions about exploration, development, and well abandonment, taking into account site-specific conditions. *See* BLM Gen. Mgmt. Manuals, MS-1201.08(F)(a); BLM Gen. Mgmt. Handbook, H-1624-1, at I-3. And a local BLM field office issued each of the permits at issue, taking into account local conditions and state-level interpretations of federal policy. This scheme is effective federal administration of federal land and resources at work, evident across virtually every federal agency with state and local field offices. It does not, as Plaintiffs suggest, somehow confer legitimacy to Plaintiffs' attempt to nationalize their claims. *See* Pls. Br. at 17 ("Delegation of certain aspects of APD approvals to BLM field offices does not sever this logical connection.").

       The differences that permeate the relevant decision-making documents, local conditions, and decisionmakers for each of the Wyoming and New Mexico permits sever the logical relationship between the Wyoming and New Mexico claims in the lawsuit. *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 209 (D.D.C. 2020) (no logical relationship where claims lacked "substantial overlap in the facts" giving rise to the claims); *Crews v. Carson*, No. 19-CV-3538, 2020 WL

12948520, at *9 (D.D.C. Oct. 16, 2020) ("courts have concluded that the failure to point to a common decision-maker amounts to a failure to meet the transactional relatedness test"). The discretion of the decisionmakers at the local level to approve permits and impose permit conditions under state-level policy interpretations distinguishes this case from the case cited by Plaintiffs. *See* Pls. Br. at 17; *Alexander v. Edgewood Mgmt. Corp.*, 321 F.R.D. 460, 463 (D.D.C. 2017) (denying joinder where "a pair of regulated low-income housing providers [had] what appears to be limited discretion as to whose applications they can reject"). Because each of the more than 4,000 permits resulted from separate transactions between oil-and-gas companies and various BLM offices, and each permit application received individual consideration—according to state-level interpretations of federal policies, local environmental conditions, and impacts unique to each permitted drilling site—it cannot be said that the Wyoming and New Mexico claims arise out of the same transaction or occurrence. *See C.G.B.*, 464 F. Supp. 3d at 208. These factual differences also outweigh any common issues of law between the Wyoming and New Mexico claims. *See In re Papst Licensing GmbH & Co. KG Litig.*, 967 F. Supp. 2d 63, 71 (D.D.C. 2013) ("Where claims arise from distinct sets of facts, they may be severed even though they rely on the same legal theory").

        2.    <u>Federal agency decisions that implement federal policy implicate local interests</u>

Challenges to implementations of federal policy are frequently found to implicate local, rather than national, interests. *See, e.g.*, *Pasem v. U. S. Citizenship & Immigr. Servs.*, No. 20-cv-344, 2020 WL 2514749, at *4 (D.D.C. May 15, 2020). Under Plaintiffs' theory, any challenge to a federal decision is "national" because it is an expression of agency policy. However, courts have distinguished between lawsuits challenging a national policy and an agency's